## MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY *v.* RAILROAD COMMISSION OF WISCONSIN.

### ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

No. 233.    Argued April 20, 21, 1915.—Decided June 14, 1915.

Where the fixing of rates does not impair the obligation of contracts, the exercise by a municipality of a lawful power to fix rates does not deprive the public utility company of its property without due process of law where it does not appear that the rates fixed are confiscatory.

The fixing of rates, which may be charged by public service corporations—in this case a street car corporation—is a legislative function of the State.

While the State may enter into contracts preventing it for given periods from exercising the function of rate making, such a renunciation must be so clear and unequivocal as to permit no doubt of its construction. *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 265.

While it is the duty of this court to determine for itself whether there was a contract and the extent of a binding obligation, and the parties are not concluded by the decision of the state court, in so determining this court gives much consideration to the decisions of the state court construing the statutes of the State under which the contract is alleged to have been created.

In this case, as this court cannot say that the state statute involved in this action unequivocally grants to municipalities the power to deprive the legislature of the right to exercise the rate-making function in the future, and as the state court in other cases has held that the statute did not indicate an intention to surrender such right, this court affirms the judgment of the state court, holding that no irrevocable contract was created by an ordinance establishing rates of fare of a street car company, notwithstanding that a majority of the members of the highest court of the State did not concur in that view in this case.

153 Wisconsin, 502, affirmed.

THE facts, which involve the constitutionality under the impairment of obligation clause of the Federal Constitu-

tion and the due process clause of the Fourteenth Amendment of an order of the Wisconsin State Railroad Commission establishing fares upon the system of the plaintiff in error, are stated in the opinion.

*Mr. Henry H. Pierce* and *Mr. Edwin S. Mack,* with whom *Mr. George P. Miller, Mr. Arthur W. Fairchild* and *Mr. William J. Curtis* were on the brief, for plaintiff in error:

This court will determine for itself the existence or nonexistence of the contract and whether the state law complained of impairs its obligation.

Where the effect of a change in decision detrimentally affects contract rights, such rights will be determined by the law as it existed when they accrued.

A State may not impair the obligation of its contracts.

The grant of a right to use the streets for railway purposes is a valuable property right.

The State may authorize a municipal corporation to make an inviolable contract fixing rates to be charged by a public utility.

The ordinance and its acceptance constitute, and were intended to constitute, a contract between the State and the Company definitely fixing rates during the term of the franchise. The State had authorized the City to make the contract. The State has reserved no power to amend, alter or repeal the contract.

The order of the Commission violates the due process clause, even if there were no question of contract.

Numerous authorities of this and other courts sustain these contentions.

*Mr. Walter Drew,* Deputy Attorney General of the State of Wisconsin, with whom *Mr. W. C. Owen,* Attorney General of the State of Wisconsin, and *Mr. Lester C. Manson* were on the brief, for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This suit originated in the Circuit Court of Dane County, Wisconsin, and was brought by the Milwaukee Electric Railway and Light Company against the Railroad Commission of Wisconsin. The plaintiff, a street railway company, organized under the laws of Wisconsin, and authorized to conduct a street railway business in the City of Milwaukee, sought to enjoin the Railroad Commission, organized under the laws of that State of 1905, from enforcing a certain order against the Company, whereby the right of the Railway Company to charge fares upon its railway system had been reduced below what it was contended had been previously fixed by an ordinance of the City of Milwaukee, which, it was alleged, upon acceptance, constituted an irrevocable contract between the Company and the City. In the allegations of the complaint it appears that on January 2, 1900, there was granted to the plaintiff the right to operate over certain streets, and in the ordinances of that date all franchises expiring prior to December 31, 1934, were extended to that date, and all franchises which would otherwise expire subsequently to that date were made to terminate at that time.

Section 6 of the ordinance provides:

"After the passage, publication and acceptance of this ordinance by said railway company, the rate of fare for one continuous passage upon the lines of railway within said city limits of said city owned and operated by said railway company constructed under any franchise herein, heretofore or hereafter granted to said railway company or its predecessors, successors or assigns, as the case may be, shall be not to exceed five cents for a single fare, except for children under ten years of age the rate of fare shall be three cents for one child and five cents for two children, and infants under three years of age free. Except where cars or carriages shall be chartered at a special price, which

fare shall entitle each passenger, upon demand made at the time of payment of fare, to one transfer at established points of transfer to any connecting or cross line of said railway company, for passage within said city, and convenient points of transfer shall be maintained and such additional points of transfer established as will carry out the full intent and purpose of this ordinance to maintain and extend the transfer system now in force upon the lines of said railway company at the present standard of convenience for the people of said city. Each transfer ticket, shall be good only for the passenger to whom it is issued, and for a continuous trip in the direction specified upon the transfer so given, and upon the first car leaving the transfer intersection after the time designated on such transfer.

"Provided, however, that after the acceptance of the terms of this ordinance the railway company shall, on demand made at its office in said city, or to the conductors on its cars operated on its lines within the corporate limits of said city, sell tickets in packages of twenty-five for one dollar or six for twenty-five cents, each of which tickets shall entitle the holder thereof to use the same upon the cars of said railway company only between the hours of 5:30 o'clock and 8 o'clock in the morning and between the hours of 5 o'clock and 7 o'clock central standard time, in the afternoon of each day until January 1, 1905, and shall also entitle the holder to the same privileges as are or may be accorded to passengers paying a cash fare of five cents; and the said railway company shall, from and after January 1, 1905, continue the sale of tickets in packages at the price aforesaid until December 31, 1934, each to be good at all hours of the day, with the same privileges as are or may be accorded to passengers paying a single cash fare of five cents."

The bill sets out the acceptance of this ordinance, and thereby it is claimed the Company obtained the right to

charge, until December 31, 1934, a cash fare of five cents, and to sell tickets in packages of twenty-five for one dollar or six for twenty-five cents, each of which tickets should entitle the holder to use the same upon the cars between the hours mentioned in the ordinance, and to have the privileges accorded to passengers paying five cents fare. In November, 1906, the City of Milwaukee filed a complaint with the defendant Railroad Commission for a reduction of rates of fare, and filed a similar complaint May 13th, 1908. This proceeding resulted in the order complained of, which did not interfere with the cash fare prescribed, but provided that the Company should discontinue its rate of twenty-five tickets for one dollar, and should sell tickets in packages of thirteen for fifty cents, which tickets were ordered to be accepted in payment of fare. It is alleged that this action of the Railroad Commission impairs the obligation of the contract between the City and the Company, and takes the plaintiff's property without due process of law, in violation of § 10 of Article I of the Constitution of the United States and of the Fourteenth Amendment thereto.

On the hearing in the court of first instance, it was held that there was no contract made by the passage and acceptance of the ordinance which we have quoted, and the complaint was accordingly dismissed. Upon appeal to the Supreme Court of Wisconsin that judgment was affirmed, 153 Wisconsin, 592. The case was heard before six judges of that court. Three held that the statute upon which the plaintiff relied as conferring authority upon a municipal corporation to make the contract in question did not authorize the making of a contract which would prevent the future exercise of the authority of the State to regulate the rates of fare by legislative action. A fourth judge expressed no view upon this phase of the case, specifically holding that under the Wisconsin constitution there was no power to delegate to municipal corporations an author-

ity to make irrepealable contracts respecting rates.   Two
of the judges dissented upon the ground that there was
an irrepealable contract, valid and binding between the
Company and the City, which was violated by the subse-
quent legislation creating and empowering the Railroad
Commission, and because of the action of that body in
reducing the rate of fare.

In the view we take of the case it is unnecessary to pass
upon the question whether the ordinance had the effect
to make a contract binding between the City and the
Company until subsequent legislative action by the State,
or to decide whether the grant of the rights and privileges
as to fares was, under the Wisconsin constitution, rev-
ocable at the will of the legislature.

Section 1862 of the Revised Statutes of 1860 pro-
vides:

"Section 1862. Corporations for constructing, main-
taining and operating street railways may be formed under
Chapter 86, and shall have powers and be governed ac-
cordingly.   Any municipal corporation or county may
grant to any such corporation, under whatever law formed,
or to any person who has the right to construct, maintain
and operate street railways the use, upon such terms as the
proper authorities shall determine, of any streets, park-
ways, or bridges within its limits for the purpose of laying
single or double tracks and running cars thereon for the
carriage of freight and passengers, to be propelled by
animals or such other power as shall be agreed on, with
all necessary curves, turnouts, switches and other con-
veniences.   Every such road shall be constructed upon
the most approved plan and be subject to such reasonable
rules and regulations and the payment of such license
fees as the proper municipal authorities may by ordinance,
from time to time, prescribe.   Any such grants heretofore
made shall not be invalid by reason of any want of power
in such municipal corporation to grant, or any such rail-

way corporation or person to take the same; but in such respects are hereby confirmed."

The fixing of rates which may be charged by public service corporations, of the character here involved, is a legislative function of the State, and while the right to make contracts which shall prevent the State during a given period from exercising this important power has been recognized and approved by judicial decisions, it has been uniformly held in this court that the renunciation of a sovereign right of this character must be evidenced by terms so clear and unequivocal as to permit of no doubt as to their proper construction. This proposition has been so frequently declared by decisions of this court as to render unnecessary any reference to the many cases in which the doctrine has been affirmed. The principle involved was well stated by Mr. Justice Moody in *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 265, 273:

"The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. No other body than the supreme legislature (in this case, the legislature of the State) has the authority to make such a surrender, unless the authority is clearly delegated to it by the supreme legislature. The general powers of a municipality, or of any other political subdivision of the State are not sufficient. Specific authority for that purpose is required."

The Chief Justice of Wisconsin, who delivered the opinion in which two other judges concurred, did not call in question the right of the City to make a contract with a public utility corporation, fixing the rates to be charged for a definite period, which would bind the City itself, but placed his decision upon the ground that the section in question gave no distinct authority to the City to contract away the legislative authority of the State to fix tolls

and fares, by lowering them if found to be excessive; that while the term "grant" was used, he held the grant was to be upon terms such as the municipal authorities might determine, and that this language was more appropriate to the exercise of power by the municipality than to the making of a contract between parties. The language of the section certainly lends itself to this construction, and there is nothing in specific terms conferring the right to contract by agreement between parties, much less to make such contract during its existence exclusive of any further right of the State to act upon the subject in the exercise of its legislative authority. It authorizes the grant of the use of the streets upon such terms as the proper authorities shall determine, not upon such terms as the parties in interest shall agree to.

Among cases in this court specially relied upon by the plaintiff in error is *Detroit* v. *Detroit Citizens' Street Ry.*, 184 U. S. 368. It was therein held, quoting constructions of the Supreme Court of Michigan, that the legislation involved authorized the making of a contract between the City and the Street Railway Company, which the City undertook to abrogate by subsequent ordinances; and the fact that the legislature had not attempted to interfere with the rights of the Street Railway Company in Detroit was stated, and the extent of its power to interfere with the rights of the Street Railway Company expressly held not to be involved in the case. In another case relied upon by plaintiff in error, *Cleveland* v. *Cleveland City Ry.*, 194 U. S. 517, it was specifically stated (p. 534) that the courts of Ohio had held that the acceptance of ordinances of the character in question constituted a binding contract, and the Ohio statute was set forth and held to expressly authorize a binding contract for the period covered by the statute. In the case of *Minneapolis* v. *Minneapolis Street Ry.*, 215 U. S. 417, the ordinance which was held to constitute a binding contract for the rates of fare pre-

scribed therein, was specifically validated by an act of the legislature of Minnesota subsequently passed.

It is true that this court has repeatedly held that the discharge of the duty imposed upon it by the Constitution to make effectual the provision that no State shall pass any law impairing the obligation of a contract, requires this court to determine for .itself whether there is a contract, and the extent of its binding obligation, and parties are not concluded in these respects by the determination and decisions of the courts of the States. While this is so, it has been frequently held that where a statute of a State is alleged to create or authorize a contract inviolable by subsequent legislation of the State, in determining its meaning much consideration is given to the decisions of the highest court of the State. Among other cases which have asserted this principle are *Freeport Water Co.* v. *Freeport,* 180 U. S. 587, and *Vicksburg* v. *Vicksburg Water Co.,* 206 U. S. 496, 509.

Both sides contend that the decisions of the Supreme Court of the State have decided this controversy. The plaintiff in error insists that it is governed by *Linden Land Co.* v. *Milwaukee Electric Ry. & Light Co.,* 107 Wisconsin, 493. In that case an injunction was sought by a tax-payer and owner of property abutting upon the street, to enjoin the Company from accepting the franchise and the state officers from receiving the acceptance of the ordinance of 1900. The Linden Land Company and another, as tax-payers and owners of land abutting upon the street were afterwards brought in as plaintiffs, and the court, speaking of § 1862, said the City was empowered to grant the use of streets and franchises to street railway companies upon such terms as the proper authorities should determine, and that that was a broad grant of discretionary powers, and also said that in the character of suit then before it, the right to maintain it depended upon whether there had been shown any wrongful squandering or surrender of the

moneys, property or property rights of the City, or unlawful increase of the burdens of taxation threatened by the proposed ordinance, and held that the claim that parties had offered large sums of money for the franchise privileges granted to the Company, and that the Company itself had offered to pay large sums of money in case the City would grant the right to charge five cents fare until the year 1935, did not sustain the allegation that there was a squandering of the money and rights of the City, in rejecting the offers and enacting the ordinance. We do not find in this case any decision of the question here involved, as to whether the alleged contract between the City and the Company would have the effect to deny, because of the provisions granting authority to the City in § 1862, the subsequent right of the legislature to fix rates binding upon the Company.

The Chief Justice in the opinion in the present case regarded the construction of § 1862 as controlled by the previous case of *Manitowoc v. Manitowoc & N. T. Co.*, 145 Wisconsin, 13. In that case, the Supreme Court of Wisconsin used the following language, which is quoted with approval by the Chief Justice in this case:

"No specific authority having been conferred on the city to enter into the contract in question, the right of the State to interfere whenever the public weal demanded was not abrogated. The contract remained valid between the parties to it until such time as the State saw fit to exercise its paramount authority, and no longer. To this extent, and to this extent only, is the contract before us a valid subsisting obligation. It would be unreasonable to hold that by enacting sec. 1862, Stats. (1898), or sec. 1863, Stats. (Supp. 1906: Laws of 1901, ch. 425), the State intended to surrender its governmental power of fixing rates. That power was only suspended until such time as the State saw fit to act."

The Chief Justice further pointed out that § 1863, which

was in question in the *Manitowoc Case*, was substantially
the same as § 1862, involved in the present case, for while
§ 1863 authorized consent by municipal authorities to the
use of streets upon such terms and subject to such rules
and regulations and the payment of such license fees as
the council or board may from time to time prescribe, it
was the same in effect as § 1862, authorizing municipal
authorities to grant the use of streets upon such terms as
they shall determine, and concluded:

"We are of opinion, therefore, that the holding in the
*Manitowoc Case*, to the effect that neither section indicated
any legislative intention of surrendering the sovereign
power of the state to regulate fares, was entirely correct
and was advisedly made."

While it is true that the opinion of the Chief Justice in
this case was concurred in by only two other judges of the
six who sat on this appeal, in view of the decision of the
same court in the *Manitowoc Case*, we can have no doubt
that the judicial interpretation of § 1862 by the highest
court of the State of Wisconsin denies authority to munic-
ipal corporations to make contracts concluding the State
from the future exercise of its power to fix the rates which
may be charged by such public service corporations as
are here involved.

In view of the weight which this court gives in deciding
questions involving the construction of legislative acts to
decisions of the highest courts of the States in cases of
alleged contracts, and our own inability to say that this
statute unequivocally grants to the municipal authorities
the power to deprive the legislature of the right to exer-
cise in the future an acknowledged function of great public
importance, we reach the conclusion that the judgment of
the Supreme Court of Wisconsin in this case should be
affirmed.

We may observe that the contention of deprivation of
property without due process of law, is practically dis-

posed of in what we have said. For if the State might still exercise its authority to fix rates notwithstanding the so-called contracting ordinance, the exercise of such lawful power could not deprive the plaintiff of property without due process.

*Affirmed.*