James W. Robertson, Member of City Council, E. M. Davis, President Voters Non-Partisan League of Delaware, E. M. Davis, and William R. Seward, President Central Labor Union, *vs.* Wilmington and Philadelphia Traction Company, a corporation of the state of Delaware, and Board of Public Utility Commissioners for the City of Wilmington.

1. Carriers—Rates—Order of Utility Commissioners—Notice of Appeal.

A notice of appeal by citizens and taxpayers from an order of the board of public utility commissioners for a city, made on a given date and granting to a traction company "the right to charge a seven-cent fare per passenger riding on cars of such company," is sufficient under 26 *Del. Laws, c.* 206, § 6, requiring the notice of appeal to set forth the order appealed from.

2. Carriers—Rates—Appeal from Order of Commissioners—Sufficiency.

That a petition by citizens and taxpayers for the stay of an order by the board of public utility commissioners of the city, from which an appeal has been taken, was also signed by others than the parties signing the notice of appeal, does not invalidate the notice.

3. Constitutional Law—Delegation of Legislative Power—Utilities Commission.

An order of the board of public utility commissioners, created by legislative act and given supervision over public utilities, fixing rates to be charged by traction companies, was not void as an exercise of delegated legislative power.

4. Constitutional Law — Impairment of Contracts — Carriers — Change of Rates.

A provision in the charter of a traction company, whereby the company shall not at any time be allowed to charge a greater amount than five cents for any one fare, may be changed by the consent of the parties, if the rights of the people are not injuriously affected; such change not constituting an impairment of an obligation of a contract.

5. Carriers—Public Service Commissions—Powers—Increase of Rates.

The board of public utility commissioners for the city of Wilmington may allow an increase of rates to a traction company under a law giving it supervision over all public utilities, and power to make such orders as it may deem proper concerning rates.

6. Carriers—Hearings—Fixing Rates—Parties Entitled to be Heard.

Under the statute creating the board of public utility commissioners for the city of Wilmington, a public utility, as well as a citizen, has the right to be heard and to obtain a change in its rates.

7. CARRIERS—PUBLIC SERVICE COMMISSIONS—HEARING—NOTICE OF HEAR-
ING.

Under a statute creating the board of public utility commissioners for
the city of Wilmington, rates of a traction company cannot be changed on
ex parte application of the company, without an opportunity accorded upon
public notice to citizens and taxpayers to be heard.

(*July* 3, 1918.) .

PENNEWILL, C. J., and RICE and HEISEL, J. J., sitting.

*Robert G. Harman*, for appellants.

*Herbert H. Ward* and *Andrew C. Gray* for appellee, Wilming-
ton and P. Traction Co.

*Thomas F. Bayard*, City Sol., for Board of Public Utility
Commissioners for City of Wilmington.

Appeal to Superior Court for New Castle County from
Order of Board of Public Utility Commissioners.

Proceeding by the Wilmington and Philadelphia Traction
Company before the Board of Public Utility Commissioners for
the City of Wilmington to increase its rates. From an order
allowing the increase, James W. Robertson and others appeal.
Modified and affirmed.

Appeal by James W. Robertson and others from an order
of the Board of Public Utility Commissioners for the City of
Wilmington, granting the Wilmington and Philadephia Traction
Company the right to charge a seven-cent fare per passenger.
Order not affirmed but, by consent, amended.

The Wilmington and Philadelphia Traction Company, on May
7, 1918, presented a petition to the Board of Public Utility Com-
missioners asking for the right to increase the rate of fare from five
cents to six cents per passenger. On June third, 1918, the company
presented an amendment to the petition asking for the right to
increase the fare to seven cents per passenger, and on the same
day without an opportunity for objection to be heard, a decision
was reached by the board granting the prayer of the amended
petition of a seven-cent fare, and, on June, fifth, 1918, the board
formally adopted an order or resolution to that effect. An ap-
peal from the order was taken, under *chap.* 206, *Vol. 26,
Laws of Delaware*, and a special session of the Superior Court to

hear and determine the appeal was called for June 14, 1918, at 11 o'clock a. m., as provided by *Superior Court Rules Nos.* 85 and 86. The court being convened on the last mentioned date, Mr. Harman, for the appellants, and many other citizens and taxpayers of the city of Wilmington and patrons of the respondent company, presented and read to the court a petition asking for a stay of the order appealed from and a restraining order against the respondent company preventing them from charging more than a five-cent fare, pending final determination of the appeal.

Mr. Bayard, for Board of Public Utility Commissioners, first objected that the notice of appeal filed did not set forth the order appealed from, in accordance with the requirements of the statute creating the board. *Chapter* 206. *Vol.* 26, *Laws of Delaware.*

PENNEWILL, C. J.:—The statute provides:

"*Sec.* 6.   All orders made by said board pursuant to the power and authority given by this act, shall be served on the public utility to be affected thereby, within a reasonable time after such order is made, by the delivery of a certified copy thereof to the person to be affected thereby, or to any officer or agent of any corporation, association or joint-stock company upon whom a summons may be served in accordance with the provisions of the laws of this state.   Such order or orders shall take effect within a reasonable time, such time to be fixed in such order.   Within thirty days from the date of service of any such order or orders, any party to the proceedings, person or company affected may appeal from such order or orders to the Superior Court of the state of Delaware, by filing a notice of appeal, setting forth the order appealed from, with the prothonotary of the said court, which said court is hereby given jurisdiction to hear and determine such appeal on the merits of the matters forming the basis of the order.   The taking of an appeal shall not stay the operation of the order appealed from, but a stay may be granted by the court in its discretion, either with or without terms and conditions.   *   *   * "

The order appealed from is an "order of the Board of Public Utility Commissioners for the city of Wilmington, made on Wednesday, the fifth day of June, A. D. 1918, granting to the Wilmington and Philadelphia Traction Company the right to charge a seven-cent fare per passenger riding on the cars of said company."

[1]   We think the notice of appeal is in substantial compliance with the requirements of the statute.

*Mr. Bayard,* for the Board of Public Utility Commissioners, then objected to the petition for a stay of the order appealed from, on the ground that it was signed by persons who were not parties to the notice of appeal.

PENNEWILL, C. J.:—[2] Since the filing of the notice of appeal, certain remonstrants have filed a petition signed by the parties who signed the notice of appeal, and by many others. We do not see how that invalidates the notice of appeal, if the petition includes the same names, even though it embraces others also.

*Mr. Ward,* of counsel for Wilmington and Philadelphia Traction Company, stating that he was appearing *amicus curiae,* asked the court to define the status of Mr. Gray and himself, as no citation had been issued or served on the Wilmington and Philadelphia Traction Company, asking for a *stay of the said order,* and that he and Mr. Gray were in court only upon verbal notice given them by Mr. Harman that the court would be sitting.

PENNEWILL, C. J.:—The application now before the court is for an order to stay the order made by the Board of Public Utility Commissioners, and nothing more. It is in the nature of a restraining order in the Court of Chancery; and, in analogy to the practice in that court, we hold that the notice of the application given by counsel is sufficient, and the company is now permitted to resist the application, if it desires to do so.

*Superior Court Rule* 86 is as follows:

"Upon the filing of the notice of appeal from an order made by the Board of Public Utility Commissioners, the prothonotary shall forthwith issue citation to the appellee returnable within ten days, and shall also forthwith issue notice to the said Board of Public Utility Commissioners to be served upon any member thereof, and to be returned within ten days, commanding them to send to said court, together with the notice, the record of their proceedings in the case, certified under the hand of the secretary and seal of the commissioners."

It is unnecessary now to determine who is meant by the word "appellee" in the rule of the court, but we will direct the prothonotary to issue citation to the company. Citation was thereupon issued, served and returned.

(At this point, on the fourteenth day of June, 1918, after a conference and by agreement of counsel with the court, the company was permitted to charge a six-cent fare per passenger during the pendency of the appeal.)

The court was then adjourned until the twenty-fourth day of June, 1918. On reconvening, the appellants contended that the Board of Public Utility Commissioners did not have the power or authority to grant the company the right to increase its fare from five cents to seven cents per passenger, and its order or resolution was therefore, void. On the contrary it was contended that under the statute creating the Board of Public Utility Commissioners for the city of Wilmington, the board had power to raise or lower the rates charged by any public utility operating in the city of Wilmington.

PENNEWILL, C. J., delivering the opinion of the court:

The Wilmington City Railway Company and the Front and Union Street Railway Company were incorporated by special act of the Legislature before the passage of the General Incorporation Law, and by amendment to their charters the maximum rate of fare was fixed at five cents, in the following language:

"And the said company shall not at any time be allowed to charge a greater amount than five cents for any one fare, ticket or ride in their cars through the said city."

On the fifth day of June, A. D. 1918, the Board of Public Utility Commissioners made an order granting to said railway companies the right to charge seven cents for a fare, and from that order this appeal was taken.

The Board of Public Utility Commissioners was created by an act of the Legislature, and the parts of the act material to this case may be stated as follows:

"The said board shall have supervision over all public utilities operating within the limits of the said city of Wilmington. * * *

"The said board shall have general supervision over all public utilities as herein defined, within the limits of the city of Wilmington, and shall have power, after hearing upon notice, by order in writing * * * to hear and examine complaints concerning rates charged by any such public utility as herein defined, and to make such recommendations and orders as it may deem proper concerning such rates."

There are many other powers conferred upon the board by the act, and they are for the most part of a supervisory character.

The Appellants deny the authority of the board to grant to the railway companies the right to charge a higher fare than that fixed by statute, viz. five cents, because—

First.  The Constitution of this state vests all legislative power in the General Assembly, and such power cannot be delegated to any other body.  The fixing of rates to be charged by a railway company is a legislative power, and, therefore, the act of the board was without authority and void.

Second.  If the Legislature can confer upon said board the power to regulate rates under some circumstances, it cannot grant an increase beyond the maximum rate fixed by statute or by the charter of the company, because such an act would impair the obligation of a contract between the state and the company.

Third.  The act creating said board, when fairly construed, cannot be held to mean that the board has, under a right to regulate fares, the power to establish rates when a maximum rate of fare had already been fixed by statute.

Fourth.  If the Legislature could delegate to the Board of Public Utility Commissioners the right to fix rates of fare to be charged by said railway companies, and the act of the board would not be an impairment of a contract between the state and the companies, but rather a police regulation, then such right could not be conferred except by express language, and certainly not by implication.  The act did not confer such right by express language, or even by implication.

We will consider these grounds urged by the appellants, in the order in which they are stated.

[3]  In support of the first ground, the well-known case of *Rice v. Foster*, 4 *Har.* 479, (489), is cited.  The court are clearly of the opinion that this case is not applicable to the present one. In the *Rice-Foster Case* the Legislature had passed "An act authorizing the people to decide by ballot whether the license to retail intoxicating liquor shall be permitted among them."  It involved the right of the people of the county to pass a legislative

30 Del.] Robertson et al. vs. Wil. & Phila. Trac. Co. et al.    161

Opinion.

act. In the case before the court the Legislature created a state agency and invested that body with power to perform a legislative act, viz., to regulate the rates that city railways should charge. In one case it was the delegation of legislative power to the people, and in the other it was the exercise of legislative power by an agency of the state, just as it would have been if the power had been given to the municipality, the city of Wilmington. The distinction, we think, is clear, and the case referred to cannot, therefore, be regarded as an authority in support of appellants' contention.

[4] Upon the second ground urged against the act of the board, the court were by no means free from doubt, and our difficulty was much increased because of the fact that there is a decision in our own state by the Court of Errors and Appeals that seemed to be against the decided preponderance of authority in other states.

Undoubtedly the important, indeed the vital question in the present case is this: Was the statutory provision which fixed the maximum fare that the railway companies should charge, at five cents, a contract or a mere regulation or condition, subject to the police power of the state? In most states, and notably in New Jersey, every doubt in such controversies is resolved in favor of the police power, and a stipulation respecting the rate of fare to be charged by a railway company in a statute or municipal ordinance, is held to be, wherever possible, a condition or regulation, and not a contract binding upon the state. But the authorities practically agree that it is possible for the state to make such a contract, and whenever the language clearly and unmistakably shows that such was the intention of the Legislature, it is binding, and cannot be changed except by the consent of the contracting parties.

In no case, perhaps, has the law upon the subject been more clearly and succinctly stated than in *Milwaukee v. R. R. Commission of Wisconsin*, 238 *U. S.* 174. 35 *Sup. Ct.* 820, 59 *L. Ed.* 1254.

Mr. Justice Day, in delivering the opinion of the court, said:

"The fixing of rates which may be charged by public service corporations, of the character here involved, is a legislative function of the state, and while the right to make contracts which shall prevent the state during a given period from exercising this important power has been recognized and approved by judicial decisions, it has been uniformily held in this court that the renunciation of a sovereign right of this character must be evidenced by terms so clear and unequivocal as to permit of no doubt as to their proper construction."

To the same effect is the case of *Home Telephone Co. v. Los Angeles*, 211 *U. S.* 265, 273, 29 *Sup. Ct.* 50, 52 (53 *L. Ed.* 176), wherein the court said:

"For the very reason that such a contract has the effect of extinguishing pro tanto an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power."

Undoubtedly the reason for the law as now recognized and declared by the courts is to some extent the growth and development of the police power of the state. The importance and necessity of such power is better understood now than formerly, and many acts are now regarded as within its scope which were not considered in former years.

The Delaware case of *P., W. & B. R. R. Co. v. Bowers*, 4 *Houst.* 506, (534), was decided in 1873. In that case Chancellor Bates said:

"The power to adjust its tariff of charges by its own officers, according to their views of the necessities of business and of justice to the public, without supervision, was a part of the franchise as it was granted. The attempted regulation by the Legislature of this power materially abridges the beneficial exercise of it by the corporation, and without any doubt impairs the obligation of the contract in the sense of the Constitution as interpreted by the Dartmouth College Case."

It is true that since the decision by Chancellor Bates the police power of the state has been very much extended by statute and judicial decision, but such doctrine was urged by counsel and considered by the court in that case, and it was distinctly held that the power of the company "to adjust its tariff by its own officers according to the necessities of business and justice to the

public, was a contract the obligation of which the Legislature could not impair," and not a regulation that was subject to the police power of the state. This was a decision by the highest court of the state and cannot be lightly considered or disregarded because of changed conditions. It would seem to dispose of the question so fully argued by counsel in the present case—whether the power given by the Legislature to a public utility company to charge certain rates is a contract or mere regulation.

We say very frankly that the *Bowers Case* will not be disregarded by this court unless the present case can be distinguished therefrom.

It clearly appears from the authorities that the fixing of rates to be charged by public service corporations is a governmental function, and that it can be conferred by the Legislature on a state agency, such as a municipality or public utility commission; that when the rate has been fixed by statute it cannot be changed by one party without the consent of the other, if the grant of the right clearly and unmistakably constitutes a contract between the parties; if it was not a contract, but a mere regulation, prohibition or condition of franchise, the state may, under its police power, which is an attribute of sovereignty, regulate or alter the rate that had been fixed by statute, municipal ordinance or commission's order.

Applying to the present case the test contained in the opinion of Justice Day above quoted, was the fixing by statute of a maximum rate of five cents a renunciation of the sovereign right to fix rates evidenced by terms so clear and unequivocal as to permit of no doubt as to their proper construction? Was it clearly a contract between the state and the companies, or merely the condition of a power or franchise granted? When the Legislature said the companies should not charge a rate exceeding five cents, there was, of course, an implied agreement that they should have a right to charge that much; but was it in fact anything more than a prohibition against charging a higher fare? It is true that, when the companies accepted the provisions of the statute that fixed the maximum rate, they impliedly agreed not to charge

more than such rate; but was the language employed such as to evidence unequivocally an agreement that the state had renounced the right to fix a different rate?

In the absence of the *Bowers Case*, we would say the sovereign right of the state to regulate the rates to be charged by said companies in the future could not be defeated by such language as was employed in the statute, and that there was no contract between the state and the companies that precluded the state, in the exercise of its police power, from changing the rate of fare fixed by the staute. We feel, however, that so far as this question is concerned the decision referred to should be controlling upon this court, although, in view of the great weight of modern authority, the Supreme Court of the state might very well lay down a different rule from the one declared in the *Bowers Case*.

But this is not a case where the state, through the agency of the utility board, is endeavoring to reduce the fare below the sum which it had agreed might be charged, or to limit the right or power that had been given to the company, as in the *Bowers Case*. Neither is it a case where the company, upon its own motion, had charged more than five cents, which it had agreed not to exceed. It is a case where the state, which had fixed a maximum rate of five cents, agrees, through an agency it had created, that the companies may charge a higher rate, the other party to the contract consenting thereto. So that even though there was a contract binding on the parties that made it, it was possible for them to change it if it was right and proper to do so.

Our conclusion, therefore, is that, if there was a contract, the parties thereto could change it, provided the rights of the people were not thereby injuriously affected. From what we have said it is obvious that the *Bowers Case* is distinguishable from the one now before the court, and that our conclusion is not in conflict with the decision given in that case.

We come now to the consideration of the appellants' last point, viz., that the act creating the Board of Public Utility Commissioners does not, when fairly construed, confer upon the board the power to regulate fares when a rate had been already established by statute.

Does the act creating the Board of Public Utility Commissioners for the city of Wilmington confer upon said board the power to regulate the fares to be charged by the railway companies aboved mentioned?

[5] It is difficult to escape the conviction when the entire act is considered, that one of its purposes was to regulate the charges of public utility corporations. The powers given to the board over public utilities of the city are so broad and controlling that it is impossible to believe that the Legislature did not intend that the power to regulate fares should be included. But there is a provision of the act which, in the opinion of the court, expressly gives such powers, viz., the provision "to hear and examine complaints concerning rates charged by any such public utility as herein defined, and to make such recommendations and orders as it may deem proper concerning such rates."

When the board is given power to hear complaints concerning rates charged by a railway company, or other public utility, and make such orders as it may deem proper concerning such *rates*, we must conclude that it had the power to change any rate that the Legislature could have changed. It was made an agency of the state and vested with all the power the Legislature possessed respecting the fixing of rates for public utilities in the city of Wilmington, subject, of course, to the right of appeal. And this power is given, we think, not only by implication from the general and broad language of the act, but also by express language.

[6] It would be placing upon the statute a construction entirely too narrow to say it means that an individual may complain, but not the company. It is hardly necessary to say that the act was meant to be fair and useful to both individual and company, and that there might be conditions in which either would have cause to complain.

The court having determined that the board had power to regulate fares, Mr. Harman requested that a day be fixed for the hearing of the appeal on its merits, and contended that is should

be heard *de novo*, and not on the record. Without passing upon this question, the court thereupon, after examining the record, said:

PENNEWILL, C. J.:—We have carefully examined the record in this case, and as a result of that examination we announce the following decision:

[7] The act creating the Board of Public Utility Commissioners manifestly contemplates that before an order shall be made regulating the rates that shall be charged by any public utility company, a hearing shall be given to citizens respecting the complaint filed, or a reasonable opportunity for such hearing. The board is clothed with large powers and they should be exercised fairly to both the company and the public. It was not intended that an order shall be made upon information received in an ex parte proceeding, or without a fair opportunity for any citizen to state his objection to complainant's application.

The petition presented to the board by the railway companies, on May seventh, 1918, asked for the right to increase the rate of fare to six cents, and upon that application a reasonable opportunity was given to any one who might desire to be heard, but upon the amendment to the petition, which was presented to the board June third, 1918, and which asked for the right to increase the fare to seven cents, we are of the opinion that such an opportunity was not given.

The first notice of a request for a seven-cent fare was made to the board by petition, on June third, and on the same day a decision was reached by the board granting said request; its solicitor being called in and directed to "prepare a resolution showing the findings of the board, based on the following":

"That an order be drawn that the Wilmington and Philadelphia Traction Company be permitted to charge a straight seven-cent fare, but shall be required to sell four tickets for twenty-five cents."

So it appears from the record that the public had no notice respecting the seven-cent fare before the board had determined to grant the company's request.

It is true that the order or resolution granting the right to charge a seven-cent fare was not formally adopted until June fifth, but there was no public notice given that it would be deferred until that date. It is also true that protest was made on the third and fifth of June, by certain persons, but that did not relieve the board of their duty to give reasonable notice to the public of the application before deciding the case. And, moreover, as to the protest made on June third and fifth, the secretary was instructed, on June fifth, to reply to the protestants "that the board has had two public meetings, and that they will decide the issue on the facts laid before them." By "two public meetings," reference could have been had only to the meeting of May twenty-first, which was with respect to a six-cent fare, and the meeting of June third, of which the public had no notice, so far as the record shows, and at which the question of an increase to seven cents was presented and determined.

The court have no doubt that the board have endeavored to do their duty to all parties, but we think it not improper to suggest that their duties might be made easier in the future if they should adopt some plain and simple rules governing their procedure, including a rule providing for a fair hearing on the part of both the public and the public utility.

For the reasons given, the court are of the opinion that the order of the board appealed from should not be affirmed on the record filed in the case.

(Counsel for appellants and for the Wilmington and Philadelphia Traction Company, respectively, then conferred and announced an agreement to permit the company to give the six-cent fare a trial for a reasonable length of time, with the right, if found insufficient, to make a new application to the Board of Public Utility Commissioners.)

PENNEWILL, C. J.:—We think the real parties before us are the appellants and the railway company, and with their consent we will amend the order made by the board so that it shall read as follows:

That the Wilmington and Philadelphia Traction Company be permitted to charge a straight six-cent fare.