Johnson, J.,
concurring. Inasmuch as the members of the court who join iti the judgment differ as to the grounds upon which they concur, I briefly set forth my views.
The only parties to the franchise-contract in controversy are the city and the telephone company; and the first question we encounter is, Was it a valid and binding contract between those parties?
Sections 9197 and 9198, General Code, which are the sections under which the franchise-ordinance was passed, contain provisions under which telephone companies may construct and maintain underground wires and pipes or conduits in the streets and public ways of any city or village “when the consent of such city or village has been obtained therefor.” Section 9198 provides that such consent shall be given t>y the council in cities or villages.
All the essential steps necessary for the execution of a valid franchise-contract between the parties were taken in this case.
The numerous authorities cited in the briefs of counsel establish the proposition that where the municipality has the right to withhold or to grant its consent at will, it has ample power to include among the terms of the grant provisions for adequate service at reasonable and fixed rates. And the acceptance by the company of the terms and conditions of the grant constitutes a contract between the two parties.
*120 As an illustration of many cases holding this view, it is said in City of Manitowoc v. Manitowoc & Northern Traction Co., 145 Wis., 13, at page 26: “Inasmuch as the city might on any terms refuse its consent to the use of its streets by interurban cars, we see no reason why it might not exact any conditions it saw fit, provided they were not unlawful in themselves, and as to the parties to the contract there was nothing unlawful about the condition we are considering. The decided cases fully sustain this view. We therefore hold that the parties were competent to make the contract entered into.” To the same effect are 3 Dillon on Municipal Corporations (5 ed.), 1952, and Pond on Public Utilities, § 431.
In the case of Farmer et al. v. Columbiana County Telephone Co., 72 Ohio St., 526, the question presented here was not before the court. It did not involve a construction of the section which required the consent of the municipality for the construction of the conduit.
However, it is very urgently and properly pointed out by counsel that in the case now before us the public utilities commission of the state, as' the representative of the state, is a party, and is here insisting that the existence of the franchise-contract does not stay the arm of the state in the exercise of its legislative rate-making power in the premises. Under the circumstances of this case has the state the paramount authority to regulate rates under the police power, in disregard of the franchise-contract ? This is the decisive question here. Cases in which *121 the litigation was solely between the municipality and the company do not assist in its solution.
In Interurban Railway & Terminal Co. v. Public Utilities Commission, 98 Ohio St., 287, some phases of the question were presented and the authorities concerning them were fully examined and the rules stated. It would be wholly unprofitable to repeat what was said there. It is sufficient to say that the leading case, Home Telephone & Telegraph Co. v. City of Los Angeles, 211 U. S., 265, is one of the many cases there examined, and the following language quoted from it at page 273: “It has been settled by this court that the State may authorize one of its municipal corporations to establish by an inviolable contract the rates to be charged by a public service corporation (or natural person) for a definite term, not grossly unreasonable in point of time, and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates. [Citing cases.] But for the very reason that such a contract has the effect of extinguishing pro tanto an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power.”
The above comprehensive statement of the relation of the state to the municipality, and to contracts made by the latter under the authority of the state, has been declared in very many cases in the federal and state courts. As said by Mr. Justice Day in Milwaukee Electric Railway & Light Co. v. Railroad Commission of Wisconsin, 238 U. S., *122 174, at page 180: “This proposition has been so frequently declared by decisions of this court as to render unnecessary any reference to the many cases in which the doctrine has been affirmed.” No estoppel can apply to the state. Where it has retained the power, it acts whenever the public weal demands.
In Interurban Co. v. Public Utilities Commission, supra, the franchise-contract there involved was examined and was found to have been entered into pursuant to a clear and unmistakable grant of power in that behalf.
For many years the statutes of Ohio have contained provisions granting explicit authority to municipalities to make contracts for the furnishing of gas to cities and villages, to construct street railroads, and as to other matters, and to fix rates and fares in those contracts.
Now as to the franchise involved in this case, Section 9197, General Code, provides that the telephone company shall have the right to construct and maintain underground wires and conduits, etc., for containing, protecting and operating such wires in the streets and public ways of the city “when the consent of such city * * * has been obtained therefor.”
Assuming that the language just quoted cannot be said to make the clear and unmistakable grant of power, which is necessary under the decisions of the supreme court of the United States and of many states, as well as of this court, to suspend during the existence of the contract the governmental power of fixing and regulating rates, still it must *123 be kept in mind that there is no such requirement so far as the binding validity of the contract between the parties themselves is concerned. That requirement only relates to the power of the state to interfere in the exercise of the police power for the public welfare.
As said in City of Traverse City v. Citizens’ Telephone Co., 195 Mich., 373, at page 384: “Accepting it as permissive- only, it remains valid between the parties until such time as the reserved State control is asserted and interposed against it. The statute conferring controlling powers upon the railroad commission does not of itself abrogate the contract.”
In Milwaukee Electric Railway & Light Co. v. Railroad Commission of Wisconsin, supra, at page 183, the following is quoted from Manitowoc v. Manitowoc & N. Trac. Co., 145 Wis., 13, 28, and approved by the supreme court of the United States: “No specific authority having been conferred on the city to enter into the contract in question, the right of the state to interfere whenever the public weal demanded was not abrogated. The contract remained valid between the parties to it until such time as the state saw fit to exercise its paramount authority.” This proposition has been declared in many cases.
It is very important in the consideration of cases such as this to keep in mind the distinction between the power of the state and its municipalities to regulate rates by compulsion, and the right of a city to exercise its contractual power in the making of a franchise-contract with a public service company. *124 The power to regulate rates is the exercise of the police power by the legislative authority. The company property having been devoted to a public use must yield to public regulation in the interest of the public welfare. That power must be reasonably exercised, and in no degree confiscatory. A contract is a different matter. It. is not compulsory, it is voluntary. It implies parties capable of contracting, and a meeting of their minds upon the thing they contract about and as to the considerations for the contract.
Subsequent to the making of this contract, and while it was in full legal effect and being carried out by the parties, and before the taking of any step whatever with reference thereto by the public utili-ties commission, Sections 4 and 5 of Article XVIII of the Constitution were adopted in September, 1912. By that amendment the municipalities of the state were given plenary power to deal with the subject involved in this controversy. Since that amendment they have full and exclusive authority in the making of contracts for the product or service of public utilities free from any supervisory or other control by the state. Those provisions are self-executing. . -
This court has considered and enforced those constitutional provisions in a number of cases which are familiar. Dravo-Doyle Co. v. Village of Orrville, 93 Ohio St., 236; Link v. Public Utilities Commission, 102 Ohio St., 336; Ohio River Power Co. v. City of Steubenville, 99 Ohio St., 421, and City of Lima v. Public Utilities Commission, 100 Ohio St., 416.
*125 In the latter case it was held that when the municipality and a utility contract for its service and fix in the contract the rate for such service, the public utilities commission is not empowered to authorize the utility, to exact the payment of a charge in excess of that agreed upon.
As already stated this franchise-contract was made prior to the' adoption of the constitutional amendment referred to, and if the contract had not been binding on the parties when made, or if the city had exceeded its authority in any way in the making of the contract, or if the contract had any infirmity in itself, the subsequent adoption of the constitutional amendment would not give vitality to that void or infirm contract. So far as the validity of the contract itself is concerned, it must be determined by the law in existence at the time it was made. This contract was in every respect valid and binding between the parties when made. There was no infirmity in it. So far as the contract is concerned it has remained valid between the parties until the present. The company has asserted its right to enjoy all the privileges conferred by it. While this contract perfectly valid between the parties was in existence' and was being performed by the parties, the state surrendered its supervisory right over the contractual power of the city. The people by constitutional amendment explicitly conferred that power — a part of the sovereignty — on the city. The state no longer sustains the relation to the city which permits it to set aside and disregard the contract in the exercise of its police power. That is now the fixed public policy of the state *126 declared in its constitution. Some cases are cited in which constitutional amendments, made after a contract is entered into, are referred to. But I have seen none which conferred on the city absolute explicit power to deal with the subject as the Ohio amendment does.
In addition to what has been said it must also be noted that the public utilities commission is an administrative board. Its powers are specially conferred by statute and it has been repeatedly held that it has no authority other than thus conferred. City of Cincinnati v. Public Utilities Commission, 96 Ohio St., 270; Sylvania Home Telephone Co. v. Public Utilities Commission, 97 Ohio St., 202, 207; City of Lima v. Public Utilities Commission, 100 Ohio St., 416, 422; City of Washington v. Public Utilities Commission, 99 Ohio St., 70, and Village of Oak Harbor v. Public Utilities Commission, 99 Ohio St., 275, 282.
In Interurban Railway v. Public Utilities Commission, supra, it was pointed out that no specific authority had been conferred upon the public utilities commission in Ohio to interfere'with contracts between municipalities and public utilities, and that in the absence of such a grant there was no such authority. That is, in Ohio, so far as the public utilities commission’s power is concerned, the state, where there is a contract, leaves the parties where it finds them. My views as to that feature of the case were set out at length, together with the authorities concerning it, in the Interurban case, supra, and there is no need for me to repeat that discussion here.
*127 Hough, J., concurs in the foregoing concurring opinion.