## 11398

CITY OF SPARTANBURG *ET AL.* v. S. C. GAS & ELECTRIC
CO. *ET AL.*

(125 S. E., 295)

1. Street Railroads—Franchise Ordinance Accepted Held Enforceable Contract.—Ordinance granting street railway franchise, providing for extension of lines beyond city limits, accepted in writing, *held* binding contract between city and street railroad, enforceable even as to suburban lines lying outside of city.

2. Street Railroads—City Could Compel Operation of Street Railroad Line Pursuant to Franchise, Notwithstanding Railroad Commission's Power to Regulate.—Act February 3, 1923 (33 St. at Large, p. 183), giving Railroad Commission authority to regulate, supervise and control public utilities, did not preclude city from instituting proceeding in mandamus to require street railroad to operate lines beyond city limits, as required by franchise.

3. Street Railroads—City Could Require Operation of Street Railway at Loss, Where Electric Light and Power Business Was Profitable.—Where franchise granting right to operate street railway also embraced the right to manufacture and sell gas and electric power, and where the electric light and power business was

profitable, city could require operation of street railway at a loss; the contract constituting a single transaction, and the railway and the power and light business not being separable.

4. STREET RAILROADS—OPERATION OF BUS LINE NOT COMPLIANCE WITH STREET RAILWAY FRANCHISE.—Operation of bus line *held* not compliance with franchise requiring operation of street railway.

5. STREET RAILROADS—NEITHER COURTS NOR RAILROAD COMMISSION COULD AUTHORIZE OPERATION OF BUS LINE AS SUBSTITUTE FOR STREET RAILROAD.—Neither the Railroad Commission nor Courts could authorize street railway to operate bus line as substitute for street railroad required by franchise.

Original proceeding in mandamus by the City of Spartanburg and others against the South Carolina Gas & Electric Company and others. Writ issued.

*Messrs. Nicholls & Wyche, Bomar, Osborne & Brown* and *Lyles, Daniel & Drummond,* for relators, cite: *Right of Street Railway Company to discontinue line:* 19 L. R. A. (N. S.), 866. *Spartanburg franchise an. enforceable contract:* 114 S. C., 74; 19 L. R. A. (N. S.), 866; 67 L. Ed., 669. *Contract to operate cannot be repudiated:* 249 U. S., 399; 65 L. Ed., 764; 54 L. Ed., 472; 251 U. S., 396; 254 U. S., 513; 11 A. L. R., 249; 9 A. L. R., 1148; 37 A. S. R., 312; 126 N. E., 456. *Statutory duty to operate:* Sec. 5059, Vol. 3, Code 1922. *Rate fixed by contract can be enforced:* 65 L. Ed., 777; 65 L. Ed., 765; 67 L. Ed., 284. *Power of Railroad Commission to fix rates does not extend to rates fixed by contract:* 3 A. L. E., 685, 696; 121 N. E., 688; 3 Code 1922, Ap., p. 1785. *Mandamus proper remedy:* 18 R. C. L., 148; 37 A. L. R., 312; 46 L. R. A. (N. S.), 1119. *Railroad Commission without jurisdiction:* 3 A. L. R., 685; 99 S. E., 723.

*Messrs. Henry M. Earle, H. E. DePass, Brown & Boyd* and *E. M. Blythe,* for respondents, cite: *Railroad Commission has complete jurisdiction:* 23 S. C., 517; 211 U. S., 265. *Franchise subject to modification by Legislature:* 106 U. S., 539; 117 N. Y., 310; 225 N. Y., 222. *Action of Commission proper:* 251 U. S., 396; 216 U. S., 262. *Cor-*

*poration entitled to compensation for service:* 169 U. S., 466; 125 U. S., 680; 128 U. S., 174; 143 U. S., 339; 143 U. S., 517; 156 U. S., 649; 164 U. S., 578. *One department need not be operated at expense of other departments:* P. U. R. 1919A, 666; P. U. R. 1920A, 446; P. U. R. 1920A, 517; P. U. R. 1920C, 1000; P. U. R. 1920C, 326; P. U. R. 1920B, 705; P. U. R. 1920F, 707; P. U. R. 1920D, 1038; P. U. R. 1921B, 76; P. U.R. 1921C, 91; P. U. R. 1921C, 409. *Franchise not a continuous contract:* 92 S. C., 127.

January 14, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is a proceeding in mandamus. The City of Spartanburg passed an Ordinance which granted to F. D. McEowen and his associates and assigns the right to construct, maintain, and operate a street railway through, on, and along the streets and avenues in said city. The ordinance provided for the extension of its lines beyond the city limits, to some suburban cotton mills. The ordinance further provided a franchise for the use of its streets for electric lights and power lines, and the operation of gas conduits, etc. The ordinance was accepted by McEowen, and it is admitted that the respondent here is operating under that franchise, which was accepted in writing. The suburban lines were not completed for a while, and the Spartanburg Railway & Gas Company, then the owner of the franchise, refused to complete it. Action for specific performance was brought, and this Court held in *Thomas v. Spartanburg Railway & Gas Company,* 114 S. C., 74; 103 S. E., 149, that the accepted ordinance was a contract and required the suburban lines to be completed under it.

I. It has been adjudged by this Court that the ordinance accepted in writing is a binding contract and must be enforced, even as to the suburban lines which lie outside of the city.

II. The respondent claims that the Legislature has passed an Act putting electric railways under the jurisdiction of the Railroad Commission, and this Court has no jurisdiction in the matter: In its argument the respondent thus states its claim:

"On February 3, 1923, an Act was duly approved, amending, and to some extent modifying, the original Act. This modification first excludes from the jurisdiction of the railroad Commission public utilities owned by municipalities or any agency thereof; secondly, it takes from the said Commission the right to alter any charge for service that is the subject of any existing contract, franchise, or ordinance, etc. Neither section of this modification of the acts empowering said Commission has any bearing whatever on this proceeding. The clear object and intent of the Legislature was to create a commission with the necessary machinery to enable it to regulate, supervise, and control the public utilities within the State, other than those owned by municipalities."

It will be observed that the power claimed is to "regulate, supervise, and control." That refers, and can only refer, to a going concern. It does not, in any way, pretend to give the Commission the power to annul or destroy the operation of public utilities. The Legislature did not pretend to give to the Railroad Commission nor could it have given to the Railroad Commission, or to the Courts, the power to destroy or impair the obligations of a contract.

III. The respondents claim that the street railway can only be operated at a loss, and, therefore, it would amount to a confiscation of private property to require it to operate at a loss. The respondent's statement before the Railroad Commission is:

"Q. What does your franchise embrace? A. The franchise embraces the right to manufacture and sell gas, electric power, electric lights, electric energy, I might say, and engage in the business of transportation."

"Q. How is it you contend that the railroad can go into bankruptcy without these other subsidiary lines? How is it when you discontinue railway service you do not discontinue gas and electric service? A. No question of bankruptcy is involved. Finding one of the departments absolutely useless to the people, they ask the privilege of cutting off that arm of its service. It is merely a question of abandonment. Now, the other question was: Why do we not also ask the same as to the other branches of service? We are not asking any favors at all. We would not ask you to consider our petition relative to this railroad company, were we in a different financial position. This company, as a public utility, has got to go on operating, but the law does not require it to operate at a loss. We haven't asked to discontinue the gas for this reason. The gas company is growing all the time. Everybody that builds a new house wants gas and electric service. If we cannot give it to a man, he will go to you. We are not asking you to cut out the gas. We could not show you the people had abandoned the use of gas. The gas is paying its way, and it has a future before it. In the old times, people did not use gas stoves, but in the modern homes they all put in gas stoves. We can make that go by great economy and hard work. Now, the electric light business—there is a great demand for electricity. People are availing themselves of all sorts of modern conveniences. We can make money on these two things, because there is a demand for them. There is no demand for the street railroad, except by 3 per cent of the people, and we ask to cut off that dead arm of our service. That is the basis we are here on."

It will be observed that three businesses are included in this one ordinance, and they are linked together in its contract. Whatever may be said about the separateness of the gas franchise, the electric light and power business is linked to its electric railway business. The respondent admits that its electric light and power

franchise is valuable and it is a paying business. If the street railway does not pay with all the advantages it derives from its electric light and power adjunct, then an electric railway alone must fail. It is inevitable that Spartanburg must be without a street railway, if the respondent be allowed to keep the one and destroy the other. They stand or fall together as an entire contract. It could not be held that if A makes a contract to buy from B a certain tract of land of 100 acres, at $100.00 per acre, A could force B to reserve 10 acres of bone and pay him only $9,000.00 for the 90 acres of good land. The contract is one transaction, and the $1,000.00 paid for the 10 acres of worthless land is not confiscation. The 10 acres may be separated from the 90 acres, but the railway and power business cannot be separated.

IV. The proposition of respondents, that a bus line had been substituted for the street railway, is ineffective. Neither the Railroad Commission nor the Courts are authorized to substitute for the thing contracted for something else that is "just as good," if it be just as good. Governmental agencies have no right to substitute one contract for another. It is adjudged that the showing of the relators is sufficient, and that the writ of mandamus do issue, requiring the respondent to restore its lines and operate the same according to law.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN: I dissent upon the grounds: (1) That, under 32 Stat., 938, the Railroad Commission had authority to order the discontinuance of the street car service, for the reasons given in Order No. 268. (2) That to compel the operation of the street car lines at a loss would violate the Fourteenth Amendment, Const. U. S. (3) That sufficient substitutionary service is provided for in said order, and may be enforced by the Commission.

MR. JUSTICE MARION: I am constrained to dissent.

Very broadly indicated, without argument or any attempt fully to cite pertinent authority, the grounds of my dissent are:

1. The contract between the city and the predecessors in interest of the South Carolina Gas & Electric Company was made subject to the reserved police power of the State, and within that power can be changed by the State without impairing the obligation of the contract. *Milwaukee Electric Railway v. Wisconsin Railroad Commission,* 238 U. S., 174; 35 S. Ct., 820; 59 L. Ed., 1254. *Town of Victoria v. Victoria, I. L. & P. Co.,* 134 Va., 134; 114 S. E., 92; 28 A. L. R., 562. See *Salt Lake City v. Utah Light & T. Co.,* 52 Utah, 210; 173 P. 556; 3 A. L. R., 715, considering and construing in this connection a constitutional provision similar to our Section 4, Art. 8, Const. 1895.

2. The order of the Railroad Commission was *prima facie* within the scope of the authority delegated to that Commission by the General Assembly, in the exercise of this reserved police power of the State. Sections 922 to 925, Civ. Code, 1912, Vol. 1, as amended by Act March 24, 1922, appendix, Volume 1, Civ. Code, 1922, pp. 1785–1789. See *City of Worcester v. Worcester C. S. Railway Co.,* 196 U. S., 539; 25 S. Ct., 327; 49 L. Ed., 591.

3. If so, the validity of the order should be tested in the manner and by the procedure prescribed by the Public Utilities Act, and in no view are the relators entitled to the remedy of mandamus.