## CITY OF WORCESTER *v.* WORCESTER CONSOLIDATED STREET RAILWAY COMPANY.

### SAME *v.* SAME.

### SAME ET AL. *v.* SAME.

### SAME ET AL. *v.* SAME.

### SAME *v.* SAME.

ERROR TO THE SUPREME JUDICIAL AND THE SUPERIOR COURTS OF THE COMMONWEALTH OF MASSACHUSETTS.

Nos. 144, 145, 146, 147 and 148. Argued January 23, 24, 1905.—Decided February 20, 1905.

The city is the creature of the State. A municipal corporation is simply a political subdivision of the State existing by virtue of the exercise of the power of the State through its legislative department.

While a municipal corporation may own property not of a public or governmental nature which is entitled to constitutional protection, the obligation of a railroad company to pave and repair streets occupied by it based on accepted conditions of a municipal ordinance granting rights of location is not private property beyond legislative control.

Chapter 578, Laws of Massachusetts of 1898, providing for taxation of street railway companies is not void, as violating the impairment of obligation clause of the Federal Constitution, so far as this case is concerned, because it relieved a railroad company from the obligation to pave and repair streets under the terms and conditions of certain municipal ordinances which the company had duly accepted.

THESE five cases were brought here by writs of error, sued out by the city of Worcester, for the purpose of reviewing the several judgments of the Supreme and Superior Courts of the Commonwealth of Massachusetts, respectively, affirming the judgments of the trial courts in favor of the railroad company, the defendant in error. The five cases involve the same questions and were brought for the purpose of answering any possible objection to the particular mode adopted in any one case for the purpose of obtaining the relief sought by the plaintiff in error. 182 Massachusetts, 49. The first two cases were petitions for writs of mandamus against the railroad

company, which petitions were demurred to, and the demurrers sustained. Of the three other cases, two were suits in equity, and were brought by the city against the railroad company, and were heard upon the bills and demurrers thereto, the court sustaining the demurrers; the fifth case was an action on contract originally brought by the city against the railroad company, in the Superior Court and heard upon demurrer to the complaint, which was sustained and judgment ordered for defendant from which judgment plaintiff appealed to the Supreme Judicial Court of the Commonwealth.

The defendant in error is a street railroad corporation, organized and doing business under the laws of the State of Massachusetts, and it owned and operated in the city of Worcester and in numerous outlying cities and towns a street railway system, parts of which had previously belonged to other similar corporations and had been acquired by the consolidated company in 1901, by the purchase of the franchises and properties of such other companies under the general provisions of the street railway laws of the Commonwealth. Under the general laws of the Commonwealth, as they existed, from 1891 to 1893, it was provided that a street railway company might apply to the board of aldermen of a city, or the selectmen of a town, for the location of the tracks of the railway company in the streets of the city or town, and, after hearing, it was provided that the board might grant the petition "under such restrictions as they deem the interests of the public may require; and the location thus granted shall be deemed and taken to be the true location of the tracks of the railway, if an acceptance thereof by said directors in writing is filed with said mayor and aldermen or selectmen within thirty days after receiving notice thereof." Section 7 of chap. 113 of the Massachusetts Public Statutes.

The law also provided (section 21 of above act) that the board of aldermen or the selectmen might, from time to time, "under such restrictions as they deem the interests of the public may require, upon petition, authorize a street railway

company whose charter has been duly accepted and whose tracks have been located and constructed, or its lessees and assigns, to extend the location of its tracks within their city or town, without entering upon or using the tracks of another street railway company; and such extended location shall be deemed to be the true location of the tracks of the company, if its acceptance thereof in writing is filed in the office of the clerk of the city or town within thirty days after receiving notice thereof."

Section 32 of the act made it the duty of every street railway company to keep in repair, to the satisfaction of the superintendent of streets, "the paving, upper planking or other surface material of the portions of streets, roads and bridges occupied by its tracks, and if such tracks occupy unpaved streets or roads, (the company) shall, in addition, so keep in repair eighteen inches on each side of the portion occupied by its tracks," etc.

As the law then stood, the railroad company, on several different occasions, between 1891 and 1893, made applications for and was granted the privilege of extending the location of its tracks. On the eleventh day of May, 1891, the defendant in error, upon application, was duly granted an extension of its location for its tracks in certain streets in the city of Worcester, which extension of location was stated in the order or decree of the board of aldermen to be granted "upon the following conditions;" eight different conditions then follow, among which is:

"Second. That block paving shall be laid and 'maintained between the rails of its track and for a distance of eighteen inches outside of said rails for the entire distance covered by this location.' "

This order or decree was duly accepted in writing by the defendant in error, and its acceptance filed with the clerk of the city of Worcester. Other extensions of locations were applied for and granted during this time, some of which were upon the condition or restriction that the paving should be

between the rails and outside thereof to the street curb, and these conditions were accepted and the acceptance duly filed in the city clerk's office.

Subsequently and in 1898, (chap. 578 of the Massachusetts Laws of that year), provision was made for a somewhat different system of taxation than that which prevailed at the time these several extensions of locations were granted and accepted by the railroad company. It was provided by section 11 of that act as follows:

"SEC. 11. Street railway companies shall not be required to keep any portion of the surface material of streets, roads and bridges in repair, but they shall remain subject to all legal obligations imposed in original grants of locations, and may, as an incident to their corporate franchise, and without being subject to the payment of any fee or other condition precedent, open any street, road or bridge in which any part of their railway is located, for the purpose of making repairs or renewals of the railway, or any part thereof, the superintendent of streets or other officer exercising like authority, or the board of aldermen or selectmen, in any city or town where such are required, issuing the necessary permits therefor."

After the passage of this act of 1898 the railroad company consented and conformed to its requirements, and thereafter omitted to make the repairs in the streets which had been required of it at the time when its extended locations were granted during the period from 1891 to 1893. The city thereafter sought by these various actions or proceedings to compel the street railway company to repair and maintain the surface of the streets, as provided for by the law in force when the extended locations were given and accepted. During the time that the railroad company had since the passage of the act of 1898, omitted to make the repairs provided for as a condition for the granting of its application for extended locations, the city had incurred expenses in renewing and repairing various portions of the pavements, because of the omission and refusal

of the railroad company to do so, and one of these actions was brought to recover the expenses thus incurred by the city in making such repairs and renewing such pavement.

*Mr. Arthur P. Rugg,* with whom *Mr. John R. Thayer* was on the brief, for plaintiff in error:

The conditions contained in the grants of extensions were legally imposed, the city and the railroad company were empowered to enter into contracts and the acceptance of the location with the conditions constituted a contract and the obligation to pave assumed by the contract is a property right which cannot be taken from the city without due process of law.

As to what is a property right within the Fourteenth Amendment see *Campbell* v. *Holt,* 115 U. S. 620. Restrictions constitute valuable property rights. *Soulard* v. *United States,* 4 Pet. 511; *Metropolitan City Ry. Co.* v. *Chicago,* 87 Illinois, 317. Under the Massachusetts laws the municipality has certain property rights with reference to highways and the repair thereof. Rev. Laws, c. 51, §§ 1, 17, 18, 23; *Butman* v. *Newton,* 179 Massachusetts, 1, 6; *Perry* v. *Worcester,* 6 Gray, 544; *Deane* v. *Randolph,* 132 Massachusetts, 475; *Hill* v. *Boston,* 122 Massachusetts, 344; *Pratt* v. *Weymouth,* 147 Massachusetts, 245, 254; *Brookfield* v. *Reed,* 152 Massachusetts, 568; *Collins* v. *Greenfield,* 172 Massachusetts, 78, 81; *Tindley* v. *Salem,* 137 Massachusetts, 171. Under the laws of Massachusetts the municipality has authority to arrange for the repair of streets. *Morrison* v. *Lawrence,* 98 Massachusetts, 219; *Sampson* v. *Boston,* 161 Massachusetts, 288; *Cavanagh* v. *Boston,* 139 Massachusetts, 426; *Smith* v. *Rochester,* 76 N. Y. 506; *Anthony* v. *Adams,* 1 Metc. 284.

This property right cannot be taken from the city by the legislature. Legislative power over the municipality is very extensive, but it is not universal and does not extend to property acquired for special purposes or to rights of immunity, in which respect the city has the same rights as the individual

to his private property. *Mt. Hope Cemetery* v. *Boston,* 158 Massachusetts, 509, and cases cited on p. 512; *Commissioners* v. *Lucas,* 93 U. S. 108; *Mt. Pleasant* v. *Beckwith,* 100 U. S. 514, 533; *Broughton* v. *Pensacola,* 93 U. S. 266; *New Orleans, M. & T. R. Co.* v. *Ellerman,* 105 U. S. 166, 172; *Richmond* v. *Telephone Co.,* 174 U. S. 761, 777.

These property interests and pecuniary rights of a municipality as to a public way, when taken in conjunction with the contract power of the municipality with reference to the repair of streets, *Brookfield* v. *Reed,* 152 Massachusetts, 568, places the property rights of the city, in respect of highways, upon the same basis as its property rights in sewer systems and water works. Property rights of municipalities in sewers are recognized in a multitude of cases. *Johnston* v. *District of Columbia,* 118 U. S. 19; *Maxmilian* v. *Mayor,* 62 N. Y. 164; *Coan* v. *Marlborough,* 164 Massachusetts, 206; *Child* v. *Boston,* 4 Allen, 41. As to water works see *Hand* v. *Brookline,* 126 Massachusetts, 324; *Johnson* v. *Worcester,* 172 Massachusetts, 122; *Lynch* v. *Springfield,* 174 Massachusetts, 430; *Esberg Gunst Co.* v. *Berlin,* 55 Pac. Rep. 961; *S. C.,* 34 Oregon, 282; *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1. As to wharves, *Mersey Docks Board* v. *Gibbs,* 11 H. L. Cases, 686; *Petersburg* v. *Applegarth,* 28 Gratt. 321; *Pittsburgh* v. *Grier,* 22 Pa. St. 54. As to gas works, *Western Savings Fund Society* v. *Philadelphia,* 31 Pa. St. 183; *San Francisco Gas Co.* v. *San Francisco,* 9 California, 483; *Middleborough* v. *N. Y., N. H. & H. R. R. Co.,* 179 Massachusetts, 520.

The city of Worcester has a special proprietary right in the property of the defendant in error reserved to it in the original statute incorporating the railroad company, Chap. 148, Mass. Laws of 1861, in regard to its right of purchase of the railroad company's property. This is property. *Richardson* v. *Sibley,* 11 Allen, 65; *Cambridge* v. *Railroad Co.,* 10 Allen, 50; *Boston & Albany R. R. Co.* v. *Cambridge,* 159 Massachusetts, 283; *Water Supply Co.* v. *Braintree,* 146 Massachusetts, 482; *Water Co.* v. *Rockport,* 161 Massachusetts, 279.

A municipal corporation is a "person" within the meaning of that word as used in the Fourteenth Amendment.

The word "corporation" as used in certain statutes, includes a municipal corporation. *Loeb* v. *Columbia Township,* 179 U. S. 472, 486; *Andes* v. *Ely,* 158 U. S. 312; 1 Dillon on Mun. Corp., 4th ed., §§ 18, 19, 20; Mass. P. S., c. 3, § 3, cl. 16; Mass. R. L., c. 8, § 5, cl. 16; *Covington & L. Turnpike R. R. Co.* v. *Sandford,* 164 U. S. 578, 592; *Pembina Consol. Mining Co.* v. *Pennsylvania,* 125 U. S. 181.

The act of the Massachusetts legislature should not be construed to have abrogated the municipality's contract with the railroad company and this court can so hold notwithstanding the construction placed on the act by the state court.

Where the validity of the state statute is attacked upon the very ground that it was in conflict with the contract clause of the Federal Constitution this court examines *de novo* the meaning of the statute and places its own interpretation upon it. *McCullough* v. *Virginia,* 172 U. S. 102, 109; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Mobile & Ohio R. Co.* v. *Tennessee,* 153 U. S. 486; *Wilson* v. *Standefer,* 184 U. S. 399, and cases cited on p. 411. The legislative history of the act shows that it was not intended to abrogate the rights of the municipality.

*Mr. Bentley W. Warren* for defendant in error:

The board of aldermen of Worcester in imposing the so-called conditions, claimed by the city to amount to contracts, contained in the orders of location acted, so far as it was intrusted with any power in relation to the location and construction of the defendant's railway, not in the capacity of officers or representatives of the city of Worcester, but as public officers under authority delegated to them by the legislature. The city of Worcester, as a municipal corporation, had no power, whether acting by its board of aldermen, by its city government, or otherwise, with respect to street railway locations within its limits. Municipal corporations in Massachusetts possess only such powers and rights as are ex-

pressly or by implication granted by the State. *Spaulding* v.
*Peabody,* 153 Massachusetts, 129; Opinion of Justices, 150
Massachusetts, 592; *Swift* v. *Falmouth,* 167 Massachusetts,
115; *Bangs* v. *Snow,* 1 Massachusetts, 180, 189.

Without express legislative authority a town cannot ap-
propriate money for defense against an invading enemy, *Stet-
son* v. *Kempton,* 13 Massachusetts, 272, 279; nor to build a
county highway, *Parsons* v. *Goshen,* 11 Pick. 396; nor to cele-
brate Cornwallis's surrender, *Tash* v. *Adams,* 10 Cush. 252;
nor to purchase company uniforms, *Claflin* v. *Hopkinton,* 4
Gray, 502; nor to celebrate the Fourth of July, *Hood* v. *Lynn,*
1 Allen, 103; *Gerry* v. *Stoneham,* 1 Allen, 319; *Morrison* v.
*Lawrence,* 98 Massachusetts, 219; nor to pay expenses in-
curred in promoting or opposing the annexation of one mu-
nicipality to another. *Minot* v. *West Roxbury,* 112 Massa-
chusetts, 1; *Coolidge* v. *Brookline,* 114 Massachusetts, 592.

The powers of a municipality are only such as they can be
clearly shown to possess. *Minturn* v. *Lane,* 23 How. 435;
*Detroit* v. *Citizens' Street Ry. Co.,* 184 U. S. 368, 388. Every
reasonable doubt is against the power. This doctrine is vital
to the public welfare. *Pearsall* v. *Great Northern Railway Co.,*
161 U. S. 646, 664; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659,
666; *Citizens' Street Ry. Co.* v. *Detroit Ry. Co.,* 171 U. S. 48, 54.

Assuming that the board of aldermen impose the conditions
in form and manner as they attempted to do, nevertheless they
represented said city in its corporate capacity as a mere gov-
ernmental agency, and not in its private corporate capacity,
so that, if said city became the obligee in any contract to which
the railway company was obligor, the rights of said city
thereunder were held not as its private property, but in trust
as a governmental agency for the public in general, and were,
therefore, subject at all times to the control of the legislature.
Cities have almost no private property. *South Dakota* v.
*North Carolina,* 192 U. S. 286; 2 Dillon Mun. Corp., 656, 683;
*Brimmer* v. *Boston,* 102 Massachusetts, 19; *Agawan* v. *Hamp-
den County,* 130 Massachusetts, 528, and cases cited on p. 530·

citing *Freeland* v. *Hastings*, 10 Allen, 570, 579; *Rawson* v. *Spencer*, 113 Massachusetts, 40, 45; *Stone* v. *Charlestown*, 114 Massachusetts, 214, 223; *Coolidge* v. *Brookline*, 114 Massachusetts, 592; *Hill* v. *Boston*, 122 Massachusetts, 344, 349, 355; *Laramie* v. *Albany*, 92 U. S. 307; *Tippecanoe Commissioners* v. *Lucas*, 93 U. S. 108, 114; *New Orleans* v. *Clark*, 95 U. S. 644, 654; *Meriwether* v. *Garrett*, 102 U. S. 472; *Prince* v. *Crocker*, 166 Massachusetts, 347; *Browne* v. *Turner*, 176 Massachusetts, 9.

The burden of proof is strongly upon the party asserting such private ownership by a municipality. *Proprietors of Mt. Hope Cemetery* v. *Boston*, 158 Massachusetts, 509, as cited and distinguished in *Browne* v. *Turner*, 176 Massachusetts, 9, 13.

Whatever may have been the state of the law at the time the extensions of location involved in these suits were granted, the legislature, by enacting c. 578 of the acts of 1898, relieved defendant from obligation to keep in repair any part of the surface material of the streets included in any of said extended locations.

Assuming the statute abrogated the obligations (if they were such) set out in the five cases, the legislature of Massachusetts did not, in so abrogating the obligations, violate any provisions of the Constitution of the United States. If such obligations were property such property was not private municipal property and was subject to legislative control. *East Hartford* v. *Bridge Co.*, 10 How. 511; *Laramie County* v. *Albany County*, 92 U. S. 307; *Meriwether* v. *Garrett*, 102 U. S. 472; *Browne* v. *Taylor*, 176 Massachusetts, 9, and cases cited on p. 14; *People* v. *Kerr*, 27 N. Y. 188; *Clinton* v. *Cedar Rapids R. Co.*, 24 Iowa, 455.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The defendant in error makes no objection to the form in

which the question to be decided comes before us. Whether one or the other action or proceeding is proper and appropriate need not, therefore, be considered.

The contention on the part of the plaintiff in error is that, by virtue of the restrictions or conditions placed by it upon granting the various extensions of locations of the tracks of the railroad company, and by the acceptance of the same by the company, a contract was entered into between the city and the railroad company, which could not be altered without the consent of both parties, and that as the city had never consented to any alteration of the obligation of the railroad company to make the repairs in the streets as provided for in those restrictions or conditions, the subsequent legislation contained in the act of 1898 impaired the obligation of that contract, and was therefore void, as a violation of the Constitution of the United States.

In the view we take of this subject it may be assumed, for the purpose of argument, that the city of Worcester had power, under the legislation of the State, to grant the right to extend the location of the railroad company's tracks upon the restrictions or conditions already mentioned. It may also be assumed, but only for the purpose of the argument, that the restrictions or conditions contained in the orders or decrees of the board of aldermen, upon their acceptance by the company, became contracts between the city and the company.

The question then arising is, whether the legislature, in the exercise of its general legislative power, could abrogate the provisions of the contract between the city and the railroad company with the assent of the latter, and provide another and a different method for the paving and repairing of the streets through which the tracks of the railroad company were laid under the permit of their extended location. We have no doubt that the legislature of the Commonwealth had that power. A municipal corporation is simply a political subdivision of the State, and exists by virtue of the exercise of the power of the State through its legislative department. The

legislature could at any time terminate the existence of the corporation itself, and provide other and different means for the government of the district comprised within the limits of the former city. The city is the creature of the State. *East Hartford* v. *Hartford Bridge Co.*, 10 How. 511, 533, 534.

As is stated in *United States* v. *Railroad Company*, 17 Wall. 322, 329, a municipal corporation is not only a part of the State but is a portion of its governmental power. "It is one of its creatures, made for a specific purpose, to exercise within a limited sphere the powers of the State. The State may withdraw these local powers of government at pleasure, and may, through its legislature or other appointed channels, govern the local territory as it governs the State at large. It may enlarge or contract its powers or destroy its existence. As a portion of the State in the exercise of a limited portion of the powers of the State, its revenues, like those of the State, are not subject to taxation."

In *New Orleans* v. *Clark*, 95 U. S. 644, 654, it was stated by Mr. Justice Field, in delivering the opinion of the court, that:

"A city is only a political subdivision of the State, made for the convenient administration of the government. It is an instrumentality, with powers more or less enlarged, according to the requirements of the public, and which may be increased or repealed at the will of the legislature. In directing, therefore, a particular tax by such corporation, and the appropriation of the proceeds to some special municipal purpose, the legislature only exercises a power through its subordinate agent, which it could exercise directly; and it does this only in another way when it directs such corporation to assume and pay a particular claim not legally binding for want of some formality in its creation, but for which the corporation has received an equivalent."

In *Commissioners of Laramie County* v. *Commissioners of Albany County et al.*, 92 U. S. 307, it was held that public or municipal corporations were but parts of the machinery employed in carrying on the affairs of the State, and that the

charters under which such corporations are created may be changed, modified or repealed as the exigencies of the public service or the public welfare may demand; that such corporations were composed of all the inhabitants of the territory included in the political organization; and the attribute of individuality is conferred on the entire mass of such residents, and it may be modified or taken away at the mere will of the legislature, according to its own views of public convenience, and without any necessity for the consent of those composing the body politic.

It was said in that case that "public duties are required of counties as well as of towns, as a part of the machinery of the State; and, in order that they may be able to perform those duties, they are vested with certain corporate powers; but their functions are wholly of a public nature, and they are at all times as much subject to the will of the legislature as incorporated towns, as appears by the best text writers upon the subject and the great weight of judicial authority."

In *Commissioners &c.* v. *Lucas, Treasurer,* 93 U. S. 108, 114, the question of the validity of an act of the legislature was presented, and Mr. Justice Field, in delivering the opinion of the court, said:

"Were the transaction one between the State and a private individual, the invalidity of the act would not be a matter of serious doubt. Private property cannot be taken from individuals by the State, except for public purposes, and then only upon compensation or by way of taxation; and any enactments to that end would be regarded as an illegitimate and unwarranted exercise of legislative power. . . . But between the State and municipal corporations, such as cities, counties, and towns, the relation is different from that between the State and the individual. Municipal corporations are mere instrumentalities of the State, for the convenient administration of government; and their powers may be qualified, enlarged or withdrawn, at the pleasure of the legislature."

In *Mount Pleasant* v. *Beckwith,* 100 U. S. 514, it was held

that, where no constitutional restriction is imposed, the corporate existence and powers of counties, cities and towns are subject to the legislative control of the State creating them.

In *New Orleans* v. *New Orleans Water Works Company*, 142 U. S. 79, it was also held that a municipal corporation was the mere agent of the State in its governmental character, and was in no contract relations with its sovereign, at whose pleasure its charter may be amended, changed or revoked without the impairment of any constitutional obligation. It was also therein held that such a corporation, in respect to its private or proprietary rights and interests, might be entitled to constitutional protection. The Massachusetts courts take the same view of such a corporation. *Browne* v. *Turner*, 176 Massachusetts, 9.

Enough cases have been cited to show the nature of a municipal corporation as stated by this court. In general it may be conceded that it can own private property, not of a public or governmental nature, and that such property may be entitled, as is said, "to constitutional protection." Property which is held by these corporations upon conditions or terms contained in a grant and for a special use, may not be diverted by the legislature. This is asserted in *Commissioners &c.* v. *Lucas, Treasurer*, 93 U. S. 108, 115, and in *Mount Hope Cemetery* v. *Boston*, 158 Massachusetts, 509, the Supreme Court of Massachusetts held that cities might have a private ownership of property which could not be wholly controlled by the state government.

It seems, however, plain to us that the asserted right to demand the continuance of the obligation to pave and repair the streets, as contained in the orders or decrees of the board of aldermen granting to the defendant the right to extend the locations of its tracks on the conditions named, does not amount to property held by the corporation, which the legislature is unable to touch, either by way of limitation or extinguishment. If these restrictions or conditions are to be regarded as a contract, we think the legislature would have the same right to

terminate it, with the consent of the railroad company, that the city itself would have. These restrictions and conditions were of a public nature, imposed as a means of collecting from the railroad company part, or possibly the whole, of the expenses of paving or repaving the streets in which the tracks were laid, and that method of collection did not become an absolute property right in favor of the city, as against the right of the legislature to alter or abolish it, or substitute some other method with the consent of the company, even though as to the company itself there might be a contract not alterable except with its consent. If this contention of the city were held valid, it would very largely diminish the right of the legislature to deal with its creature in public matters, in a manner which the legislature might regard as for the public welfare. In *City of Springfield* v. *Springfield Street Railway*, 182 Massachusetts, 41, this question was before the Supreme Judicial Court of Massachusetts, and the contention of the city, to the same effect as the plaintiff in error contends in this case, was overruled. It was therein held that the city acted in behalf of the public in regard to these extensions of locations, and that the legislature had the right to modify or abrogate the conditions on which the locations in the streets and public ways had been granted, after such conditions had been originally imposed by it. The case at bar was decided at the same time as the *Springfield case* (182 Massachusetts, 49), and the proposition that the legislature had the power to free the company from obligations imposed upon it by the conditions in the grant of the extended locations was adhered to, and the *Springfield case* cited as authority for the same. We concur in that view.

There is no force in the contention that the city of Worcester has a proprietary right in the property of the defendant in error, reserved to it under the original statute incorporating the Worcester Horse Railroad Company. (Chap. 148, Mass. Laws of 1861.) These sections simply give the city of Worcester the right, during the continuance of the charter of the corporation and after the expiration of ten years from the opening of

any part of said road for use, to purchase all its franchises, property, rights, etc. That right is not affected by the legislation in question, even assuming (which we do not for a moment intimate) that the act of 1898 affected the right of the city to make the purchase under the sections above cited.

We see no reason to doubt the validity of the act of 1898, and the judgments of the Supreme Judicial Court and the Superior Court of Massachusetts are, respectively,

*Affirmed.*