THE STATE, EX REL. CITY OF CLEVELAND, *v.* MASHETER, DIR. OF HIGHWAYS, ET AL.

(No. 39953—Decided November 30, 1966.)

*Mr. Bronis J. Klementowicz*, director of law, *Mr. Daniel J. O'Loughlin* and *Mr. Salvatore R. Calandra*, for relator.

*Mr. William B. Saxbe*, attorney general, *Mr. Robert M. Duncan*, *Mr. Walter J. Howdyshell* and *Mr. Harry R. Paulino*, for respondents.

*Per Curiam.* This case brings into question the validity and effect of that part of Amended Senate Bill No. 322 which reads as follows:

"Notwithstanding Sections 5501.14 and 5511.01 of the Revised Code, the Director of Highways shall remove snow and

ice, maintain, repair, or improve, and provide adequate lighting upon interstate highways to meet the requirements of the Bureau of Public Roads which are located within the boundaries of a municipal corporation. Such expenses shall be chargeable, directly or indirectly, to the operation or maintenance of the state highway system.''

It is relator's argument that this provision constitutes an offer by the state to waive or modify existing contractual obligations between municipalities and the state relating to the maintenance of interstate highways located within municipalities. Relator urges also that it accepted such offer.

Respondents, on the other hand, urge, first, that this section is unconstitutional, and, second, that, if constitutional, it does not impose a clearly defined duty on the Director of Highways.

Respondents argue that this provision of Section 2 of the act is invalid in that the General Assembly has encroached on the executive power by enacting it. In other words, respondents are contending that this act violates the doctrine of separation of powers.

The determination of policy in relation to the creation and maintenance of public highways is vested primarily in the General Assembly. 10 Ohio Jurisprudence 2d, Constitutional Law, Sections 127, 248 and 249. The Director of Highways is a statutory officer whose powers and duties are derived from legislative enactments. Such powers and duties may be imposed, modified, enlarged or eliminated by the General Assembly. The General Assembly creates policy in regard to public roads and the director executes such policy. Both the General Assembly and the director represent the state. There is no question as to any violation of the doctrine of separation of powers.

Next, respondents urge that this provision of Section 2 constitutes an impairment of the obligation of contracts.

There is no question that contracts of the state are subject to the same rules in relation to the constitutional prohibition against impairment of the obligation of contracts as are those of a private individual. 16 Corpus Juris Secundum 1301, Constitutional Law, Section 285.

The basic point in relation to the contracts presently under

consideration is that, although such contracts are executed by the director, they are executed by him in behalf of and in the name of the state. They are actually contracts of the state, not the director, and the state, like an individual, may, if it so desires, waive or release obligations due it.

In *Minneapolis Gas Co.* v. *Zimmerman*, 253 Minn. 164, 183, 91 N. W. 2d 642, the court said:

"It is finally contended that the Reimbursement Act impairs the obligation of contracts within the prohibition of the U. S. Const. Art. 1, Section 10, and Minn. Const. Art. 1, Section 11. There is no merit in this contention for two reasons. In the first place, the pre-existing contract established by plaintiff's applications to occupy the right-of-way and the occupancy permits issued by the state, created a contractual relation between two parties, the state and the plaintiff. No third parties have acquired any rights under or pursuant to the contract. It is elementary that where all parties to a contract mutually agree, by conduct or express words, to amend, rescind, or abrogate a contract, in whole or in part, such mutual action does not impair the obligation of contract within the prohibitory clauses of either the federal or state constitutions. Initially the contract was entered into in behalf of the state by the Commissioner of Highways. Thereafter, the Legislature—which is the highest representative authority through which the state can act—had the power by statutory enactment to amend the contract with the other contracting party's consent where no rights of third parties had in the meantime intervened. It is also well recognized that, if an administrative agency has entered into a contract as an agent of the state, the state (as the principal) may consent to release the other party from part or all of its obligations thereunder."

In *Jones* v. *Burns et al., State Highway Comm.*, 138 Mont. 268, 292, 357 P. 2d 22, the court said:

"The constitutional prohibition of statutes impairing the obligation of contracts prevents a state from unilaterally abrogating contracts which it has entered into, but it does not affect the validity of statutes releasing obligations due the state. *City of Worcester* v. *Worcester Consol. Street Ry. Co.*, 196 U. S. 539, 25 S. Ct. 327, 49 L. Ed 591."

It is clear that this provision of Section 2 does not constitute an impairment of the obligation of contracts.

The final argument of respondents in relation to its constitutionality is that the provision of Section 2 violates that part of Section 16, Article II of the Ohio Constitution, which provides:

"* * * no law shall be revised, or amended unless the new act contains the entire act revised, or the section or sections amended, and the section or sections so amended shall be repealed."

Respondents contend that Section 723.01, Revised Code, places a mandatory duty on a city to maintain public highways within the municipal corporation. They argue that the effect of Amended Senate Bill No. 322 is to amend this section in relation to interstate highways by placing such duty on the Director of Highways and the failure to refer to Section 723.01, Revised Code, in the new act renders such new act invalid.

The provision of Amended Senate Bill No. 322 here involved applies only to interstate highways. It shifts the duty to maintain such highways to the Director of Highways. However, such section apparently would not relieve the municipality from its primary duty to keep such roads free from nuisance. In other words, it would not relieve the municipality from liability for failure to maintain such highways.

The second paragraph of the syllabus in *City of Youngstown* v. *Sturgess*, 102 Ohio St. 480, reads as follows:

"The county primarily is obligated to construct and repair bridges upon state or county roads and the approaches thereto over streams within the limits of municipalities, but municipalities are not thereby relieved from their obligation to keep such bridges and the approaches thereto 'open, in repair and free from nuisance;' neither are such municipalities relieved from the duty to safeguard travelers upon such structures within the limits of municipalities against dangerous defects amounting to a nuisance."

The first paragraph of the syllabus in *Lengyel* v. *Brandmiller et al., Commrs.*, 139 Ohio St. 478, reads as follows:

"A statutory duty rests on both the county and the municipality to see that a bridge erected and maintained by a coun-

ty and comprising a part of the street system in a municipal corporation is kept in repair, and one who is injured by the collapse of such bridge, due to a defective condition of which the county had actual notice and the city constructive notice, may maintain an action for damages against both the county and the municipality.''

It would appear that the same theory is applicable to the present case. The duty to maintain such highways is now joint, with the primary obligation therefor now resting on the state, but it does not amend Section 723.01, Revised Code.

The next question which must be disposed of relates to the actual effect of such section. Relator contends that it is an offer to waive the obligations of the prior executed road contracts.

Nowhere in such section is the type of contracts in question mentioned. The statute is entirely silent in this respect. Neither does the statute mention any waiver on behalf of the state.

The effect of this provision of Section 2 on such contracts must be determined from an examination of the provision of Section 2 in relation to the duties of the director, prior to and subsequent to the enactment.

Prior to this enactment, under the provisions of Sections 5501.14 and 5511.01, Revised Code, the director had no duty to maintain interstate highways within municipalities. He had the power, with the consent of the municipalities, to perform such acts.

The new section places a mandatory duty on the director to maintain such interstate highways within the municipalities.

Respondents argue that this section imposes a duty on the director prospectively only, and that it does not apply to those cities with whom the director has entered into contracts. They argue that the director has no clear legal duty.

By the enactment of this section the state has now assumed the burden of maintaining interstate highways within the municipalities. Apparently, the reason for this assumption was the necessity of complying with certain regulations of the federal government. The reason for such assumption is immaterial. The fact is the state has assumed the duty which it did

not have before. It assumed the duty as to all, not part of, such interstate highways, since no exception is contained in the act. Thus, it would appear that such duty applies to those cities which have previously by contracts agreed to maintain the highways, and such municipalities are relieved from the obligations of their contracts.

To hold otherwise would create an inequitable and inconsistent situation. Those cities which had entered into contracts with the state for maintenance of interstate highways would still be required to bear the burden of the cost of such maintenance while those who had abstained from entering into such contracts would be free of such burden.

It is clear that the effect of this section is to relieve a municipality of the burden of maintaining interstate highways within its boundaries, whether or not such city had entered into a contract to provide maintenance.

The demurrer to the answer is sustained, and the writ of mandamus is allowed.

*Writ allowed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur.