653 F.2d 292
 The COMMISSIONERS OF HIGHWAYS OF the TOWNS OF ANNAWAN, et
al., Plaintiffs-Appellants and Cross-Appellees,
v.
UNITED STATES of America, et al., Defendants, Cross
Claimants, Third-Party Plaintiffs, Appellees and
Cross-Appellants,
v.
Daniel WALKER, Individually, and as Governor of the State of
Illinois, et al., Defendants, Cross-Defendants and Appellees,
v.
The STATE OF ILLINOIS, Third-Party Defendant-Appellee.
 Nos. 80-2168, 80-2190.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 29, 1981.
Decided July 7, 1981.
 
 Ronald Butler, Chicago, Ill., for plaintiffs-appellants and cross-appellees.
 Herbert Lee Caplan, Chicago, Ill., for defendants, cross-defendants and appellees.
 Robert L. Klarquist, Dept. of Justice, Washington, D. C., for intervenor.
 Before PELL and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*
 BAUER, Circuit Judge.
 
 
 1
 During the 1890's the United States exercised eminent domain over lands held by the Commissioners of Highways of several Illinois towns to obtain land to construct the Illinois-Mississippi Canal.[1] The condemnations were authorized by the River and Harbor Act. The condemnation decrees awarded the Commissioners $1.00 and required the United States to construct and forever maintain bridges across the Canal for use as public highways.
 
 
 2
 The United States opened the Canal and 74 highway bridges in 1907. As early as 1938, the Government considered abandoning the Canal because it was obsolete. After several years of negotiations, the United States agreed to transfer title to the Canal to Illinois, and Illinois agreed to release the United States from any further obligation to maintain the Canal. The conveyance agreement was signed on December 14, 1960,[2] but actual transfer of title did not occur until August 1970. From 1945 until 1970 the United States performed only minimal custodial maintenance on the Canal bridges.
 
 
 3
 In 1974 plaintiff Commissioners of Highways[3] filed this suit against the United States to enforce the 1890 condemnation decrees. The United States filed a third-party complaint against Illinois alleging that Illinois had released the United States from its obligation to maintain the bridges when it accepted title to the Canal in 1970. The parties submitted the case to the district court, the Honorable George N. Leighton presiding, on an agreed statement of facts. The court entered final judgment on April 29, 1980. The district court found that the obligation to maintain the bridges across the Canal was a covenant running with the land. Comm'rs of Highways of Towns of Annawan, et al. v. United States, 466 F.Supp. 745, 763-64 (N.D.Ill.1979). The court held that Illinois became responsible to maintain the bridges when it accepted title to the Canal. The court further held, however, that transfer of title did not transfer the United States' past due obligation to maintain the bridges from 1945 to 1970. Id. at 766-67. The court ordered the United States to pay $2,812,658 plus interest, the amount needed to put the bridges in the condition in which they should have been when the Canal was conveyed in 1970. Upon payment of the damage sum, the United States would be released from all future liability for maintenance of the bridges. Comm'rs of Highways of Towns of Annawan, et al. v. United States, No. 74 C 1861, slip op. at 12 (N.D.Ill. Apr. 29, 1980).
 
 
 4
 Commissioners and the United States cross-appeal from the judgment of the district court. Commissioners claim that the district court erred in finding that the obligation to maintain the bridges is a covenant running with the land. Plaintiffs urge us to reverse this portion of the court's judgment and hold the United States perpetually bound to comply with the 1890 condemnation decrees. The United States claims that Illinois assumed all of its obligations to maintain the bridges, both future and past, when it accepted title to the Canal and, thus, the district court erred in ordering the United States to pay the maintenance costs for repairs not performed between 1945 and 1970. The United States also claims that the court erred in awarding plaintiffs certain enumerated litigation costs. For the reasons discussed in this opinion, we affirm the judgment of the district court in part and reverse in part.
 
 
 5
 * We address first the Commissioners' claim that the district court erred in finding that the obligation to maintain the bridges, which was memorialized in the 1890 condemnation decrees, is a covenant running with the land. Commissioners argue that the obligation to maintain the bridges was the compensation for the taking of Commissioners' land, and the United States' attempt to avoid this obligation by transferring title to Illinois amounts to an uncompensated taking of the Commissioners' property in violation of the Fifth Amendment.
 
 
 6
 We agree with Commissioners that the obligation to maintain the bridges is not a covenant running with the land. A covenant running with the land is a promise concerning the use and enjoyment of land agreed to by parties in privity. Leverich v. Roy, 402 Ill. 71, 73, 83 N.E.2d 335, 336 (1949); Purvis v. Shuman, 273 Ill. 286, 294-95, 112 N.E. 679, 682 (1916); Thompson on Real Property §§ 3152, 3155 (1962); Tiffany on Real Property § 851 (1939). "Strictly speaking, it is an agreement by deed to do or not to do some particular act." Thompson on Real Property § 3150 (1962). The district court concluded that the obligation to maintain the bridges is a covenant running with the land merely because the obligation concerns the use and enjoyment of the Canal lands. Comm'rs of Highways of Towns of Annawan, et al. v. United States, 466 F.Supp. at 763. Whether a condition affects the use and enjoyment of the land, however, is only one of three necessary qualities of a covenant that runs with the land. In this case, the first necessary quality, an agreement by deed, is lacking for there is no agreement between the United States and the Commissioners to create a covenant. Rather, the obligation to maintain the bridges was imposed by the district court in the 1890 condemnation decrees, which are not agreements by deed. See Harris v. Commissioner, 340 U.S. 106, 110-12, 71 S.Ct. 181, 183-84, 95 L.Ed. 111 (1950). Therefore, the obligation to maintain the bridges cannot properly be considered a covenant running with the land.
 
 
 7
 Although we find that the district court erred in concluding that the obligation to maintain the bridges is a covenant running with the land, we agree with the court's conclusion that the United States is no longer bound by the terms of the condemnation decrees. In 1955 the Illinois General Assembly enacted legislation authorizing the Illinois Departments of Conservation and of Public Works and Buildings to accept title to the Canal from the United States. Ill.Rev.Stat., ch. 105, §§ 482a-482d. The legislation provided that the local municipal corporations responsible for maintaining the roads of which the Canal bridges are a part would be responsible for maintaining the bridges after the State accepted title. Id. at § 482d. In 1958 Congress amended the River and Harbor Act authorizing the United States to convey the Canal to Illinois. The Act decreed that upon transfer the United States would have "no further obligations" with respect to the Canal. On December 4, 1960, Illinois agreed to accept title to the Canal and release the United States from any further obligations with respect to the Canal. The United States quitclaimed the Canal to Illinois in August 1970. Upon Illinois' acceptance of title, the United States' obligation to maintain the Canal bridges ceased.
 
 
 8
 Commissioners claim that the conveyance agreement releasing the United States from its obligation to maintain the bridges deprives them of their property without just compensation. It is not clear whether the property to which plaintiffs' argument refers is the land taken in 1890 or the Commissioners' property interest in the United States' duty to maintain the bridges. Regardless of on which property interest plaintiffs rely, their claim mischaracterizes the issue before us. The United States has not deprived plaintiffs of any property without just compensation. Plaintiffs were compensated for the original taking by the decree awarding them $1.00 and requiring the United States to maintain the bridges across the Canal for the Commissioners' benefit. Nor has the United States deprived plaintiffs of their property interest in perpetual maintenance of the bridges, for it is the State, not the United States, that has taken Commissioners' property by releasing the United States from its obligation to maintain the bridges.
 
 
 9
 Commissions of Highways, which are legislatively created municipal corporations, Ill.Rev.Stat. ch. 121, §§ 6-107, 6-112, are creatures of the State, possessing only those powers and privileges which the State may choose to grant. Trenton v. New Jersey, 262 U.S. 182, 187, 43 S.Ct. 534, 536, 67 L.Ed. 937 (1923); Heffner v. Cass & Morgan Counties, 193 Ill. 439, 448, 62 N.E. 201, 204 (1901). "A (municipal corporation) is merely a department of the State, and the State may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the State exercising and holding powers and privileges subject to the sovereign will." Trenton v. New Jersey, 262 U.S. at 187, 43 S.Ct. at 536 (citation omitted).
 
 
 10
 As plaintiffs' creator, the State retains the power to control the disposition and use of its creatures' property. Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907); Worcester v. Worcester Consol. St. Ry. Co., 196 U.S. 539, 25 S.Ct. 327, 49 L.Ed. 591 (1905). See also Trenton v. New Jersey, 262 U.S. 182, 188, 43 S.Ct. 534, 537, 67 L.Ed. 937 (1923); Mount Pleasant v. Beckwith, 100 U.S. 514, 525, 25 L.Ed. 699 (1879); People v. Ill. Toll Highway Comm., 3 Ill.2d 218, 234, 120 N.E.2d 35, 44 (1954); Gasaway v. N. Branch Lake Fork Special Drainage Dist., 339 Ill. 103, 107, 170 N.E. 721, 723 (1930).
 
 
 11
 In Worcester v. Worcester Consol. St. Ry. Co., 196 U.S. 539, 25 S.Ct. 327, 49 L.Ed. 591 (1905), the City of Worcester complained that the State was unconstitutionally interfering with its property rights. Worcester Consolidated Street Railway had contracted with the City to repair and maintain City streets in exchange for use of City property. The state legislature passed an act releasing the railroad from its contractual obligation. The City sued the railroad, seeking to enforce the original contract terms. Worcester claimed that the state statute was void because it impaired an obligation of contract in violation of the Constitution and thus did not release the Railroad from its contractual duty to repair the City streets. Rejecting the City's argument, the Supreme Court held that the statute released the Railroad from all further obligations to the City arising under the contract. The Court held that the State had "the same right to terminate (the contract) with the consent of the railroad company, that the City itself" had. 196 U.S. at 551-52, 25 S.Ct. at 330-31. The Court recognized that the contract created a property right in favor of the City but held that the property right was not absolute as against the state's right to alter or abolish it. Id. at 552, 25 S.Ct. at 331. To hold otherwise, the Court noted, "would very largely diminish the right of the legislature to deal with its creature in public matters, in a manner which the legislature might regard as for the public welfare." Id.
 
 
 12
 Similarly, in Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), Pittsburgh claimed that the Pennsylvania General Assembly was depriving it of its property without due process of law. Id. at 177, 28 S.Ct. at 46. The General Assembly enacted legislation ordering Pittsburgh to consolidate with Allegheny, Pennsylvania. The Supreme Court held that the State's taking of its municipalities' property without their consent did not violate due process. Id. at 178-79, 28 S.Ct. at 46-47. The Supreme Court explained that:
 
 
 13
 (m)unicipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State.... The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States.
 
 
 14
 Id. (emphasis added).
 
 
 15
 Nothing in the United States Constitution prohibits the State from taking its creatures' property without providing compensation. Williams v. Mayor of Baltimore, 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933); Hunter v. Pittsburgh, 207 U.S. at 161, 179, 28 S.Ct. at 40, 46 (1907). That is precisely what Illinois has done in this case. As the Supreme Court noted in Hunter v. Pittsburgh, Commissioners must look to the Illinois Constitution, not the United States Constitution, for relief in this case. Id. at 179, 28 S.Ct. at 46. If the statute imposing the duty to maintain the bridges on the Commissioners comports with the requirements of the Illinois Constitution, petitioners are without any remedy. Id. That question, however, is not before us.[4] The question before this Court is whether the United States has deprived Commissioners of their property without just compensation. We find that the United States compensated Commissioners for the original taking by building and maintaining the bridges across the Canal. In 1970, Illinois released the United States from its continuing obligation to compensate Commissioners by maintaining the bridges when Illinois accepted title to the Canal pursuant to the terms of the conveyance agreement and the Illinois statute. Ill.Rev.Stat. ch. 105, §§ 482a-482d. We agree with the district court that after 1970 the United States had no duty to maintain the bridges across the Canal.
 
 II
 
 16
 The United States in its cross-appeal claims that the district court erred in holding it liable for maintenance costs required to put the bridges in the condition in which they would have been in 1970 if the United States had maintained and repaired them between 1945 and 1970. The Government argues that its obligation to maintain the bridges, including past due maintenance, ceased when Illinois accepted conveyance of title in 1970. In support of its argument, the United States relies on clause 4 of the 1960 conveyance agreement which provides that upon Illinois' acceptance of title the United States "shall have no further obligation with respect to the Canal," and on the River and Harbor Act, incorporated by reference in the conveyance agreement, which states that "(u)pon such conveyance the United States shall have no further obligation with respect to the canal."
 
 
 17
 The district court found that the United States was urging it to construe the conveyance agreement as an indemnity contract. Applying federal contract law principles, United States v. Seckinger, 397 U.S. 203, 209, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970); United States v. Allegheny, 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944), the court opined that it should not infer that Illinois intended to indemnify the United States for past due maintenance unless a mutual intent to that effect appeared with clarity on the face of the contract. Any ambiguity in the contract concerning the parties' intent should be construed against the drafter, the United States. Comm'rs of Highways of Towns of Annawan, et al. v. United States, No. 74 C 1861, slip op. at 3-4 (Apr. 29, 1980). The court held that the conveyance agreement was not an indemnity agreement and that the United States was liable for the costs of past due bridge maintenance. We agree.
 
 
 18
 The United States' reliance on clause 4 of the 1960 conveyance agreement is misplaced for that agreement was modified by the parties on December 30, 1963. The language cited by the United States was stricken from the agreement. In the 1963 supplemental agreement, clause 4 provides that upon Illinois' acceptance of title to the Canal, the United States will perform "any further work hereafter authorized ... with funds made available through subsequent Federal legislation." This later expression of the parties' intent, memorialized in the modified contract, is controlling. In 1970 Congress amended the River and Harbor Act authorizing the United States to expend "an additional sum of $6,528,000 ... for the repair, modification, and maintenance of bridges." When the 1963 supplemental agreement and the River and Harbor Act appropriations are read in conjunction, it appears that both the United States and Illinois intended for the United States to retain some responsibility to repair the bridges. We find that the district court's conclusion that the conveyance agreement did not indemnify the United States for past due maintenance is not clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).
 
 III
 
 19
 Finally, the United States claims that the district court erred in including attorney travel expenses and expert witness fees as costs against the United States. We agree.
 
 
 20
 Litigation costs may be taxed against the United States, 28 U.S.C. § 2412, but the award of costs is limited to those items enumerated in 28 U.S.C. § 1920. Attorney travel expenses are not among the listed items, and, thus, they are not recoverable. Wahl v. Carrier Mfg. Co., Inc., 511 F.2d 209, 217 (7th Cir. 1975); Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163, 1170 (7th Cir. 1968), cert. denied, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221, reh. denied, 395 U.S. 987, 89 S.Ct. 2128, 23 L.Ed.2d 776 (1969). Witness fees are among the items listed in 28 U.S.C. § 1920, but the amount of recovery is limited by 28 U.S.C. § 1821. The prevailing party is entitled to recover only $30 per day attendance allowance plus the amount of the witness' travel and board expenses. 28 U.S.C. § 1821(b), (c), (d); Adams v. Carlson, 521 F.2d 168, 172 (7th Cir. 1975). See 28 U.S.C. § 2412(d)(2)(A) (effective Oct. 31, 1981; recovery of reasonable expert witness fees to be permitted). The district court erred in including $4,186.36 expert witness fees and $1,808.45 attorney travel expenses in the judgment for costs against the United States.
 
 IV
 
 21
 For the reasons discussed in this opinion, the judgment of the district court is affirmed in part and reversed in part. We reverse only that part of the judgment assessing $1,808.45 attorney travel expenses and $4,186.36 expert witness fees against the United States. The parties are ordered to bear their own appeal costs.
 
 
 22
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 *
 The Honorable William J. Campbell, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The factual history of this controversy is extensively discussed in the district court opinion. Comm'rs of Highways of Towns of Annawan, et al. v. United States, 466 F.Supp. 745 (N.D.Ill.1979). We incorporate that portion of the opinion by reference
 
 
 [2]
 This agreement was subsequently amended on December 30, 1963, December 16, 1964, and April 27, 1971
 
 
 [3]
 Plaintiffs are Bureau, Henry, and Whiteside Counties and the Commissioners of Highways of the towns of Annawan, Alba, Atkinson, Coloma, Colona, Concord, Edford, Fairfield, Gold, Geneseo, Montmorency, Mineral, Tampico, and Wyanet. They are the successors in interest to the Commissioners involved in the 1890 condemnation actions
 
 
 [4]
 The district court dismissed without prejudice Commissioners' pendant jurisdiction claim challenging the Illinois statute on state constitutional grounds. Comm'rs of Highways of Towns of Annawan, et al. v. United States, No. 74 C 1861, slip op. at 6 (N.D.Ill. Apr. 29, 1980). Commissioners have not appealed that portion of the district court judgment